Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

## OPINION

No. 04-09-00516-CV

Justin E**. BRIGGS**, Individually, and Justin E. Briggs as Next Friend of Austin E. Briggs,
Appellants

v.

**TOYOTA MANUFACTURING OF TEXAS**, et al.,
Appellees

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-08995
Honorable Solomon Casseb, III, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:  December 15, 2010

REVERSED AND REMANDED

Justin Briggs, an employee of a subcontractor on a construction site, appeals from the

trial court's dismissal of his suit against the premises owner, general contractor, and other

subcontractors (Toyota Motor Manufacturing of Texas, Toyota Tsusho America, Inc., Automatic

Fire Protection, Walbridge Aldinger Company, Bartlett Cocke Operations, Inc., and

Walbridge/Bartlett Cocke).   We reverse the trial court's judgment and remand for further

proceedings.

**BACKGROUND**

This case arises from an explosion during the construction of Toyota's San Antonio assembly plant on March 15, 2006. Toyota Motor Manufacturing of Texas, Inc. ("Toyota Manufacturing") owned the real property upon which the construction was taking place, while Toyota Tsusho America, Inc. ("Toyota Tsusho") owned the onsite building.

On August 10, 2004, Bartlett Cocke L.P.[1] and Walbridge Aldinger Company signed a joint venture agreement, thereby forming a joint venture called Walbridge/Bartlett Cocke. The joint venture agreement stated that the sole purpose of the joint venture was to submit a bid for Toyota's San Antonio assembly plant and, if awarded the contract, to perform the construction of the plant. With regard to employees, the joint venture agreement provided: "Each Joint Venturer shall make available to the Joint Venture key project personnel." The joint venture agreement further provided,

> The Management Committee may determine that the Joint Venture may be best served by use of employees of a Joint Venturer assigned to the project on a temporary basis. These employees shall *at the discretion of the Management Committee* remain employees of the Joint Venturer, as the case may be, and the Joint Venture shall be charged for these employees' services, as determined reasonable by the Management Committee.

(emphasis added).

On March 22, 2005, Toyota Tsusho and Bartlett Cocke L.P. signed an agreement entitled "EJCDC Standard Form of Agreement Between Owner and Contractor on the Basis of a Stipulated Price" ("Agreement"). Under the Agreement, Bartlett Cocke L.P. agreed to complete all of the work necessary for the construction of Toyota's San Antonio assembly plant. The Agreement contained basic provisions, but most of those provisions incorporated or referred to

---

[1] Although Bartlett Cocke Operations, Inc. is named by Briggs as a defendant, Bartlett Cocke L.P. was the entity named as a joint venturer.

the documents defined in Article 8 of the Agreement as the Contract Documents. Article 8 provided:

ARTICLE 8. CONTRACT DOCUMENTS

The Contract Documents consist of the following: See Bid Documents dated December 8, 2004.

8.1 This Agreement (Pages 1 to 5, inclusive).

8.2 Performance, Payment, and other Bonds.

8.3 Notice of Award and Notice to Proceed.

8.4 General Conditions (Pages 1 to 38, inclusive).

8.5 Supplemental General Conditions (Pages 1, to 5 inclusive).

8.6 Specifications as listed in the Table of Contents to Owner's Bidding Document Package dated December 8, 2004 and set forth in Volume I, Division I through and including Division 16, thereof and in Volume II, Appendix A through and including Appendix F, thereof.

8.7 Drawings, consisting of (See Cover Sheet of Drawings) sheets, bearing the following general title:   Office Building, Steel Coil Building, Green Metals, Inc. Building, ARK Building, Tenneco Building

8.8 Addenda numbers   1   to   3  , inclusive.

8.9 Contractor's Bid (Pages 1, to 5, inclusive) together with Supplementary Information Submitted with the Bid.

8.10 Documentation submitted by Contractor prior to Notice of Award.

8.11 The following which may be delivered or issued after the Effective Date of the Agreement and are not attached hereto: All Written Amendments and other documents amending, modifying, or supplementing the Contract Documents pursuant to Paragraph 3.04 of the General Conditions.

None of the Contract Documents are contained in the appellate record.

In April of 2005, Bartlett Cocke L.P. and Walbridge/Bartlett Cocke entered into an Assignment of Contract Rights and Duties pursuant to which Bartlett Cocke L.P. assigned its rights and duties under the Agreement with Toyota Tsusho to Walbridge/Bartlett Cocke, the joint venture.[2]   In July or August of 2005, Walbridge/Bartlett Cocke entered into subcontract agreements with Automatic Fire Protection, Inc. ("Automatic Fire") and W.P.M., Inc. ("WPM"). WPM was Briggs's employer.   In their appellate briefing, the parties agree that these

---

[2] We note that the Agreement contained a provision that prohibited the assignment of a party's rights or interests without the written consent of the other party.  Although no document is contained in the appellate record evidencing Toyota Tsusho's written consent to the assignment, the absence of such consent is not directly pertinent to the issues presented on appeal.

subcontracts related to the installation of a fire protection system at the assembly plant. Although each of the subcontracts states that the parties "agree to, and execute this Subcontract, with all Articles and Exhibits attached and incorporated herein," no documents were attached to the subcontracts contained in the appellate record.

During the course of the construction of the assembly plant, Briggs was instructed to relocate a section of a fire protection line. Briggs isolated and depressurized the fire protection line and began to cut the line with a saw. The line exploded when Briggs cut it, causing him to sustain serious injuries to his head, neck, and back. Briggs did not return to work following the accident.

Prior to the construction of the assembly plant, Toyota Manufacturing initiated an owner controlled insurance program ("OCIP"). This OCIP, like any other owner provided insurance program, was designed to secure insurance, including workers' compensation insurance, at a reasonable price for all workers at the construction site. Toyota Manufacturing's OCIP manual provides "the Contractor and all tiers of Subcontractors . . . will be insureds under this OCIP." The manual further provides "the Contractor and all tiers of Subcontractors are required to . . . [d]elete the insurance costs for the Toyota furnished insurance from their contract bid." The manual identifies Mitsui as Toyota Manufacturing's workers' compensation carrier and states Toyota "will have issued to Contractor and each Subcontractor of all tiers, certificates of insurance evidencing the insurance the Owner will be providing for this project." Mitsui Sumitomo Insurance Group ("Mitsui") served as Toyota Manufacturing's workers' compensation carrier, issuing certificates of insurance to the following entities: Toyota Tsusho;

Automatic Fire; WPM; Walbridge Aldinger Company; and Bartlett Cocke L.P.[3] Mitsui did not issue a policy to the Walbridge/Bartlett Cocke joint venture.[4] It is undisputed that Briggs has received more than $400,000 in workers' compensation benefits from WPM through Toyota Manufacturing's OCIP since he was injured.

Briggs brought suit against Toyota Manufacturing, Toyota Tsusho, Automatic Fire, Walbridge Aldinger Company, Bartlett Cocke Operations, Inc., and Walbridge/Bartlett Cocke (collectively "Toyota") for negligence and gross negligence in connection with the assembly plant explosion. Toyota responded by filing "Defendants' Joint Motion to Dismiss for Lack of Jurisdiction," claiming the exclusive remedies provision of the Texas Workers' Compensation Act barred Briggs's suit. *See* TEX. LABOR CODE ANN. § 408.001 (West 1996). Toyota asserted each defendant "had workers' compensation coverage via the OCIP at the time of [Briggs's] claimed injuries." Following several hearings, the trial court granted Toyota's motion and dismissed Briggs's suit. This appeal followed.

## DISCUSSION

As a preliminary matter, we need to address the unique procedural posture of this case. The exclusive remedies provision of the Texas Workers' Compensation Act ("TWCA") is an affirmative defense. *Funes v. Eldridge Elec. Co.*, 270 S.W.3d 666, 668 (Tex. App.—San Antonio 2008, no pet.); *Morales v. Martin Res., Inc.*, 183 S.W.3d 469, 471 (Tex. App.—Eastland

---

[3] Although the record contains a Certificate of Insurance issued by Mitsui as insurer to WPM as insured which evidences worker's compensation insurance coverage, the record also contains a certificate of insurance issued by Valley Forge Ins. Co. as insurer to WPM as insured which also evidences worker's compensation insurance coverage. Moreover, the copy of the OCIP Insurance Application Form contained in the record that lists WPM as the subcontractor is not signed by WPM. In addition, the copy of the OCIP Insurance Program Insurance Credit Worksheet contained in the record, which appears to be a calculation of the amount a subcontractor would exclude from its bid based on the provision of insurance through the OCIP, also is not signed by WPM. Finally, we note that the Subcontract signed by WPM listed a subcontract price of $586,500.00, while both the OCIP Insurance Application Form and the OCIP Insurance Program Insurance Credit Worksheet contained in the record list a subcontracted or bid amount of $1,020,000.

[4] The record does contain a Certificate of Insurance issued by Amerisure Mutual and Amerisure Insurance as insurers to Walbridge/Bartlett Cocke evidencing workers' compensation coverage for "offsite coverage."

2005, no pet.). An affirmative defense should be raised through a motion for summary judgment or proven at trial. *In re D.K.M.*, 242 S.W.3d 863, 865 (Tex. App.—Austin 2007, no pet.); *In re K.B.S.*, 172 S.W.3d 152, 153 (Tex. App.—Beaumont 2005, pet. denied). Rather than asserting its exclusive remedies affirmative defense through a summary judgment motion, Toyota asserted its affirmative defense through a motion to dismiss and procured a pretrial dismissal of Briggs's suit.[5] While the procedure followed by Toyota in the trial court is problematic and not to be encouraged, Briggs has not raised an appellate complaint challenging the propriety of vehicle used by Toyota in connection with its affirmative defense.[6]

Nevertheless "a speedy and final judgment may be obtained on the basis of matters in bar and without formality of trial on merits, if the parties so agree or if summary judgment procedure is utilized." *Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 353 (Tex. App.—San Antonio 1999, pet. denied); *see also Kelley v. Bluff Creek Oil Co.*, 158 Tex. 180, 309 S.W.2d 208, 214 (1958). If a summary judgment procedure is not utilized when a plea in bar is asserted, the reviewing court may treat a dismissal as a summary judgment because such dismissal has the same effect as entry of a take-nothing judgment. *Martin*, 2 S.W.3d at 353-54; *Walker v. Sharpe*, 807 S.W.2d 442, 446-47 & n. 2 (Tex. App.—Corpus Christi 1991, no writ). "In such case, the reviewing court will review the record as if summary judgment was granted to determine whether the movant satisfied the notice requirements and his burden of proof under Texas Rule of Civil Procedure 166a." *Martin*, 2 S.W.3d at 354.

In this case, the record shows a summary judgment procedure was utilized in connection with Toyota's motion to dismiss. The motion was filed twenty-one days prior to the hearings

---

[5] A motion to dismiss is the functional equivalent of a plea to the jurisdiction. *Lacy v. Bassett*, 132 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

[6] Briggs complained to the trial court that a summary judgment was the only way to dispose of Toyota's exclusive remedies argument before trial, but he has not pursued this contention on appeal.

before the trial court, and the parties presented evidence in support of their positions. Therefore, we review the underlying case as a summary judgment. *See id.*

The standard of review for a summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (iii) every inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who moves for summary judgment must show that the plaintiff has no cause of action by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a fact issue to defeat the motion for summary judgment. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex. 1982); *Haight v. Savoy Apts.*, 814 S.W.2d 849, 851 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

**A. TWCA's Exclusivity Provision**

The TWCA was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 206 (Tex. 2000). An employer has the option of providing workers' compensation insurance for employees and becoming a subscriber under the TWCA, or not providing workers' compensation insurance and remaining a nonsubscriber. TEX. LAB. CODE ANN. § 406.002(a) (West 2006) (providing that except for public employers and as otherwise provided by law, an

employer may elect to obtain workers' compensation insurance coverage). "The decision to subscribe or not to subscribe, however, has certain consequences for both an employer and an employee that are specifically delineated by the TWCA." *Robertson v. Home State County Mut. Ins. Co.*, No. 2-08-280-CV, 2010 WL 2813488, *4 (Tex. App.—Fort Worth 2010, no pet.).

If the employer chooses not to subscribe, the employer may not assert common-law defenses against an employee in a negligence suit. *Hunt Constr. Group, Inc. v. Konecny*, 290 S.W.3d 238, 243 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); TEX. LAB. CODE ANN. § 406.033 (West 2006). If the employer does subscribe, the employer and the employer's employees are protected from an employee's common-law claims for injuries or death occurring during the course and scope of the employee's work responsibilities. TEX. LAB. CODE ANN. § 408.001(a) (West 2006). "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . for the death of or a work-related injury sustained by the employee." *Id.* Employees may have more than one employer within the meaning of the TWCA, and each employer may raise the exclusive remedy provision as a bar to the employee's claims. *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 143 (Tex. 2003); *Etie v. Walsh & Albert Co., Ltd.*, 135 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Under the TWCA, a general contractor is deemed the employer of a subcontractor and the subcontractor's employees if the general contractor provides, in accordance with a written agreement, workers' compensation insurance coverage to the subcontractor and its employees.[7] TEX. LAB. CODE ANN. § 406.123 (West 2006); *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 353 (Tex.

---

[7] A general contractor is "a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors." *See* TEX. LABOR CODE ANN. § 406.121(1) (West 2006). A subcontractor is a person who "contracts with a general contractor to perform all or part of the work or services that the general contractor has undertaken to perform." *Id.* § 406.121(5).

2009). A premises owner may be a general contractor for purposes of the TWCA. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 438 (Tex. 2009). The TWCA's "deemed employer/employee relationship extends throughout all tiers of subcontractors." *Etie*, 135 S.W.3d at 768.

### B. The Summary Judgment Evidence[8]

In addition to the OCIP manual and the documents previously discussed, the record also includes an affidavit from Mitsui's vice president – regional claims manager, Dale Wimer. Wimer's affidavit states Toyota manufacturing "purchased an insurance policy from Mitsui under which multiple entities received workers' compensation insurance" and notes the "OCIP was purchased for work performed at the Toyota Motor Manufacturing plant in San Antonio, Texas." The affidavit also states Briggs received workers' compensation benefits under the policy purchased by Toyota Manufacturing. In addition, the record contains the deposition testimony of Toyota Manufacturing's OCIP coordinator, Lauri Andrews. Andrews testified she believed the Walbridge/Bartlett Cocke joint venture was participating in the OCIP because its venturers, *i.e.*, Walbridge Aldinger Company and Bartlett Cocke L.P., each had insurance policies issued to them by Mitsui. She further stated that a contractor "would be in violation of their contract with Toyota likely" if it was not enrolled in the OCIP.

### C. The Record Evidence Fails to Establish the Exclusive Remedies Defense Applies

On appeal, Briggs claims Toyota failed to conclusively establish the exclusive remedies defense applies because the record is devoid of evidence showing there was a written agreement between Toyota Manufacturing and any of the other appellees under which Toyota Manufacturing agreed to provide workers' compensation coverage in exchange for a lower

---

[8] On November 9, 2010, Toyota filed a supplemental brief. Attached to the supplemental brief are documents that are not contained in the appellate record. We cannot consider those documents. *See K-Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 97 (Tex. App.—San Antonio 2002, no pet.).

contract price. As previously noted, the TWCA outlines the process by which a general contractor qualifies for immunity from common-law tort claims brought by the employees of its subcontractors. *Entergy*, 282 S.W.3d at 436. Under the TWCA, "the general contractor and subcontractor <u>must enter into a written agreement</u> under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *Id.* (emphasis added).

The Agreement and Subcontracts contained in the record make no reference to the OCIP. Although such references may be contained in the Contract Documents referenced in the Agreement and in the Articles and Exhibits referenced in the Subcontracts, our applicable standard of review requires us to indulge every inference in favor of Briggs. *Nixon*, 690 S.W.2d at 549-49. Accordingly, we must infer that the Contract Documents and Articles and Exhibits contain no provisions relating to the OCIP.

During oral argument, a concern was raised with regard to whether form might be elevated over substance in this case. We initially note that the Texas Supreme Court has emphasized the necessity of a written agreement in order to qualify for protection under the exclusive remedies provision as follows:

> The Act outlines a process by which a general contractor qualifies for immunity from common-law tort claims brought by the employees of its subcontractors. First, the general contractor and subcontractor must enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

*Entergy Gulf States, Inc.*, 282 S.W.3d at 436. Secondly, Toyota chose the procedural vehicle for bringing this issue before the trial court, and Toyota must contend with the high burden the procedural vehicle imposed on it. Under the circumstances of this case, our appellate standard of

review required Toyota to prove the applicability of the exclusive remedies provision as a matter of law. Based on the record presented, Toyota simply has failed in meeting its burden.[9]

Toyota seeks to rely on the OCIP Manual of Insurance Procedure, detailing how the OCIP at issue was to operate, as evidence of an agreement. The OCIP manual, however, falls short of constituting an express written agreement for purposes of the TWCA. *See In re 24R, Inc.*, No. 09-0125, 2010 WL 4145601 (Tex. Oct. 22, 2010) (noting policy manual did not constitute a contract). The manual's own language suggests it was not intended to be considered as a contractual document: "***This manual is not intended to amend or alter any provisions of actual contract documents or insurance policies. In matters, if any, in which these [sic] manual conflicts with suchlike, the provisions of the contract documents and insurance policies shall govern***"; "The information in this Manual is not intended to alter any provisions of the actual contract documents between the Owner and the Construction Manager or the Construction Manager and the Contractor, including insurance provisions, and if such conflict occurs, the contract documents and policies of insurance will govern." The manual further provides, "Not every company involved with the project will be insured through the OCIP." Moreover, there is no evidence the OCIP Manual, or any other written agreement for that matter, was filed with the insurance carrier for purposes of complying with the requirements of the TWCA. *See* TEX. LAB. CODE ANN. § 406.123(f) (requiring the general contractor to file a copy of the agreement to provide workers' compensation coverage with its workers' compensation carrier or, if self-insured, the Workers' Compensation Division); *id.* § 406.123(g) (making the failure to file a copy of the written agreement in accordance with subsection (f) an administrative violation).

---

[9] We note there are numerous cases in which the burden of proof was met because the contractual documents mandating enrollment in the OCIP were introduced into evidence. *See, e.g., HCBeck, Ltd.*, 284 S.W.3d at 350-51; *Hunt Constr. Group, Inc.,* 290 S.W.3d at 240, 244; *Funes*, 270 S.W.3d at 669-70.

Turning to the affidavit testimony of Wimer and the deposition testimony of Andrews, this evidence also fails to prove Toyota Manufacturing provided workers' compensation insurance coverage to its subcontractors pursuant to a written agreement. Toyota failed to meet its summary judgment burden through Andrews's statement that a contractor "would be in violation of [its] contract with Toyota likely" if it was not enrolled in the OCIP because it is unclear whether Andrews is referring to an oral or written agreement. To qualify for immunity under the statute, a written agreement is absolutely necessary. *See Entergy Gulf States*, 282 S.W.3d at 436. If Andrews was referring to some sort of oral agreement, the exclusive remedies defense under section 408.001 would not apply. Moreover, Andrews qualified her statement by stating that a contractor would "likely" be in violation of its contract. This qualification raises an inference that not all contractors would be in violation of their contracts by not enrolling in the OCIP. As for Wimer's affidavit, it wholly fails to address the written agreement issue. Therefore, such evidence fails to establish the appellees are entitled to the protections afforded by section 408.001. Without evidence to conclusively prove the exclusive remedies defense applies, Toyota was not entitled to summary judgment in its favor.

Toyota claims Briggs may not complain about the lack of evidence concerning the existence of a written agreement between Toyota Manufacturing and the other defendants because he never raised this argument in the trial court. As previously noted, however, we are reviewing the underlying proceeding as a summary judgment proceeding. A nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999). "The trial court may not grant summary judgment by default because the nonmovant did not respond to the summary judgment motion when the movant's summary judgment proof is legally

insufficient." *Id*. at 223. A movant must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *Id.* Accordingly, the burden was on Toyota to conclusively prove the existence of a written agreement, and Briggs was not required to alert the trial court to the deficiencies in Toyota's proof.

Alternatively, Toyota argues Briggs's complaint lacks merit in light of *Lazo v. ExxonMobil Corp.*, No. 14-06-00644-CV, 2009 WL 1311801 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.). In *Lazo*, the appellant claimed the appellee failed to establish as a matter of law that there was an agreement between the premises owner and the contractor regarding the provision of workers' compensation insurance coverage. *Lazo*, 2009 WL 1311801 at *2. The appellate court disagreed, noting the record contained a construction agreement between the contractor and a division of the premises owner addressing the workers' compensation issue. *Id.* In addition, the court noted the record contained an affidavit from an insurance advisor of the premises owner that the premises owner had provided insurance pursuant to an OCIP as outlined in the written agreement, the contractor had reduced its bid in recognition of the coverage, and the worker had received benefits under the policy. *Id.* Based on such evidence, the court rejected the appellant's argument on appeal and affirmed the summary judgment granted in favor of the appellee. *Id.* at *2-3.

*Lazo* is factually distinguishable from the case at bar. Unlike *Lazo*, the appellate record in this case lacks any type of written agreement between the premises owner and its contractors regarding the OCIP and the provision of workers' compensation coverage. *Lazo* is thus not on point and does not require this court to overrule Briggs's contention on appeal. Accordingly, we sustain Briggs's first issue on appeal because the proof presented to the trial court failed to

conclusively establish the existence of a written agreement for the provision of workers' compensation coverage between Toyota Manufacturing and any of its contractors.

## CONCLUSION

Based on the foregoing, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.

Catherine Stone, Chief Justice