TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00114-CV






Robert Cook, Appellant


v.


White Construction Company, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-GN-07-000679, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Robert Cook appeals a summary judgment entered in favor of White Construction
Company ("White"). Cook was injured while working on a construction project. White was the
general contractor on the project, and Cook worked for one of White's subcontractors. After
collecting workers' compensation benefits for his injuries, Cook sued White for negligence. White
moved for summary judgment on the basis of the exclusive-remedy defense. See Tex. Lab. Code
Ann. § 408.001(a) (West 2006) ("Recovery of workers' compensation benefits is the exclusive
remedy of an employee covered by workers' compensation insurance coverage . . . against the
employer . . . for . . . a work-related injury sustained by the employee."). It argued that it could
invoke the defense because even though it did not employ Cook directly, it statutorily qualified as
Cook's "employer" because it "provided" his workers' compensation insurance. See id.
§ 406.123(a), (e) (West 2006) (general contractor that "provides" workers' compensation insurance
to subcontractor's employees qualifies as "employer" of those employees for purposes of workers'
compensation laws). Cook responded by arguing that White did not "provide" his workers'
compensation insurance in the statutorily required sense. The trial court granted White's summary-judgment motion. We affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 The facts of this case are largely undisputed. Cook was injured when he fell from a
ladder while working on the construction of the Dell/Seton Children's Hospital in Austin. At the
time, Cook was an employee of Keystone Structural Concrete, Ltd. ("Keystone"), which was a
subcontractor on the construction project. White was the general contractor on the project, and Seton
Healthcare Network ("Seton") was the owner of the project.

 The contract between White and Seton stated that White "shall purchase and maintain
insurance as set forth in Article 12 of the General Conditions" to the contract. Article 12.1.1 of the
General Conditions required that White "shall provide Workers' Compensation . . . insurance
coverage, as outlined in [Article] 12.2 . . . covering the work activities on the Project." Article 12.2,
in turn, required that workers' compensation insurance "shall be provided and maintained throughout
the term of the Project" to all "employees performing duties at the Project Site." 

 Seton agreed to provide an Owner Controlled Insurance Program ("OCIP") (1) for the
project under which Seton furnished a single insurance program to cover all contractors and
subcontractors involved in the Project. Seton's contract with White required White to enroll all of
its subcontractors, including Keystone, in the OCIP. Seton retained the option to terminate the OCIP
at its discretion, but the OCIP stated that if it did so, White "and Subcontractors of all tiers will be
expected to provide insurance coverages as required by" Article 12 of the General Conditions to the
contract between Seton and White. The OCIP provided that if White and the subcontractors had to
obtain insurance coverage outside the OCIP because Seton terminated the OCIP, the costs would be
charged back to Seton.

 Seton did in fact utilize the OCIP, and White and Keystone enrolled in it. Thus, all
of Keystone's employees, including Cook, were covered by workers' compensation insurance when
Cook was injured.

 After Cook was injured, he sought and received workers' compensation benefits
under the OCIP. He then sued White, claiming that its negligence caused his injuries. White moved
for summary judgment on the basis of the exclusive-remedy defense. See id. § 408.001(a)
("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by
workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury
sustained by the employee."). It argued that it could invoke the defense because even though it did
not employ Cook directly, it statutorily qualified as Cook's "employer" because it "provided" Cook's
workers' compensation insurance through its contracts with Seton and Keystone. See id.
§ 406.123(a), (e) (general contractor that "provides" workers' compensation insurance to
subcontractor's employees qualifies as "employer" of those employees for purposes of workers'
compensation laws). The trial court granted White's summary-judgment motion. Cook appeals.



STANDARD OF REVIEW

 We review summary judgments de novo. HCBeck, Ltd. v. Rice, 284 S.W.3d 349, 352
(Tex. 2009). Summary judgment is proper when there are no disputed issues of material fact and
the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). 


DISCUSSION

 Cook argues that the trial court erred by granting summary judgment to White
because White was not statutorily entitled to invoke the exclusive-remedy defense. See Tex. Lab.
Code § 408.001(a) (exclusive-remedy defense). Cook correctly notes that because he worked for
one of White's subcontractors, White could invoke the exclusive-remedy defense only if it
"provided" Cook's workers' compensation insurance. See id. § 406.123(a), (e). Cook argues that
White did not do so.

 In a case remarkably similar to this one, the Texas Supreme Court recently examined
what it means for a general contractor to "provide" workers' compensation insurance to a
subcontractor's employee. See generally HCBeck, 284 S.W.3d 349. In that case, construction
worker Charles Rice was injured while working on a construction project. Id. at 351. Rice worked
for a company called Haley Greer, which was a subcontractor on the construction project. Id. FMR
Texas Ltd. ("FMR") was the owner of the project, and HCBeck, Ltd. ("HCBeck") was the general
contractor in charge of the project. Id. at 350. FMR contracted with HCBeck to construct an office
campus on FMR's property. Id. The contract included an OCIP and required it to be incorporated
into all contracts HCBeck entered with subcontractors. Id. FMR's contract with HCBeck allowed
FMR to terminate or modify the OCIP at any time, but if FMR did so, the contract required HCBeck
to secure (at FMR's cost) other workers' compensation insurance for itself and all of its
subcontractors. Id. at 351.

 Pursuant to the terms of the OCIP, FMR purchased workers' compensation insurance
to cover the construction project. Id. Meanwhile, HCBeck entered into a subcontract with Haley
Greer for work on the project. Id. The subcontract recognized that the project was covered by
FMR's OCIP, and it incorporated the insurance provisions of FMR's contract with HCBeck. Id. As
mandated by that contract, Haley Greer's subcontract with HCBeck required Haley Greer to enroll
in the OCIP. Id. 

 Rice, Haley Greer's employee, was injured while working on the construction project. 
He applied for and received workers' compensation benefits under the policy issued to Haley Greer
pursuant to the OCIP. Id. He then sued HCBeck for negligence. Id. HCBeck moved for summary
judgment on the basis of labor code section 406.123, arguing that it was entitled to rely on the
exclusive-remedy defense because it "provided" workers' compensation insurance to Rice through
the OCIP. See id. Rice argued that HCBeck did not "provide" workers' compensation insurance
because (1) FMR, not HCBeck, paid the insurance premiums under the OCIP and (2) Haley Greer
would have to provide its own insurance if FMR terminated the OCIP. See id. 

 Rice based the latter argument on a provision of Haley Greer's subcontract with
HCBeck that read:


ALTERNATE INSURANCE: The Owner [FMR] is not required to furnish the OCIP.
If [FMR] elects to terminate the OCIP at any time, [FMR] will give subcontractor
written notice. In the event of OCIP termination, Subcontractor and lower-tier
subcontractors will be required to provide Alternate Insurance. Alternate Insurance
is the coverage required by the [FMR/HCBeck] Contract Documents if the OCIP is
not in force or does not apply.



Id. at 353. The supreme court agreed that, standing alone, this provision seemed to require Haley
Greer to obtain its own insurance if the OCIP was terminated, but the court emphasized that the last
sentence of the provision required reference to the Alternate Insurance provision of HCBeck's
contract with FMR. See id. That provision stated: "If [FMR] elects to exclude this Agreement, or
any portion thereof, from the OCIP or for any reason [FMR] is unable or unwilling to furnish [the
OCIP] . . . the Construction Manager [HCBeck] shall secure such insurance at [FMR's] cost." Id. 
Thus, the court concluded that "[w]hen read together, these provisions outline a contingency plan
in the event FMR exercises its contractual right to opt out of its obligation to provide workers'
compensation insurance coverage, and that plan charges HCBeck with the responsibility of providing
alternate insurance, not Haley Greer." Id.

 In light of this arrangement, the supreme court held that 


HCBeck "provides" workers' compensation insurance under [labor code section
406.123(a)] because the insurance plan incorporated into both its upstream contract
with FMR and its downstream subcontract with Haley Greer included workers'
compensation coverage to Haley Greer's employees, and because the contracts
specify that HCBeck is ultimately responsible for obtaining alternate workers'
compensation insurance in the event FMR terminated the OCIP. 



Id. at 351-52.

 In addition to emphasizing HCBeck's "ultimate responsibility" for ensuring that
Haley Greer was insured, the court emphasized that it employs a "decided bias" in favor of finding
that workers' compensation coverage exists. Id. at 358. It also emphasized that its primary concern
was whether HCBeck actually provided workers' compensation insurance, not whether one could
imagine a scenario where it might fail to. Id. at 354-55, 357, 359 n.4.

 Cook argues that HCBeck does not control this case because Seton's OCIP is
distinguishable from FMR's. Specifically, he notes that FMR's OCIP said HCBeck "shall" obtain
insurance for Haley Greer if the OCIP lapsed, whereas Seton's OCIP says that "[White] and
Subcontractors . . . will be expected to provide insurance" if the OCIP lapses. (Emphasis added.) 
Cook claims that "will be expected to" is "precatory at best," not mandatory like the "shall" in
FMR's OCIP.

 As the HCBeck court emphasized, however, it is important to read OCIP language
in context. The full provision that Cook relies on reads as follows:


SETON HEALTHCARE NETWORK reserves the option not to utilize an OCIP
program for this project or to discontinue it. In such a case, the Prime Contractor
[White] and Subcontractors of all tiers will be expected to provide insurance
coverages as required by the [contract between Seton and White]--General
Conditions Article 12.



As noted above, Article 12 required that White "shall provide Workers' Compensation . . . insurance
coverage, as outlined in [Article] 12.2 . . . covering the work activities on the Project," and Article
12.2, in turn, required that workers' compensation insurance "shall be provided and maintained
throughout the term of the Project" to all "employees performing duties at the Project Site." Taken
together, these provisions make clear that White was required to provide worker's compensation
insurance to all of its subcontractors' employees, including Cook, for the duration of the project even
if Seton terminated the OCIP. Therefore, Seton's OCIP is functionally identical to FMR's, see id.
at 351-52, which suggests that HCBeck does control the outcome here.

 There are several additional facts that suggest HCBeck controls the outcome here. 
First, Seton's OCIP stated that if White had to secure alternate insurance because Seton terminated
the OCIP, White would charge the cost back to Seton; thus, there was no circumstance in which
Keystone would ever pay for its own workers' compensation insurance. (2) Cf. id. at 355 ("Haley Greer
will never bear the financial obligation of the alternate insurance."). Second, even if one can imagine
a scenario in which White might fail to ensure Keystone's workers' compensation coverage, Cook
concedes that when he was injured he was in fact covered by (and received benefits under) the OCIP. 
Cf. id. at 359 n.4 ("[W]e look at what did happen, not what might happen."). Finally, to the extent
that White's obligation to provide insurance actually was unclear (as Cook contends), we employ
a "decided bias" in favor of finding that White did "provide" workers' compensation insurance. See
id. at 358.

 For all these reasons we hold that, under HCBeck, White "provided" workers'
compensation insurance to Cook pursuant to labor code section 406.123(a). It follows that White
was entitled to rely on the exclusive-remedy defense. See Tex. Lab. Code § 406.123(e). Thus, the
trial court did not err by granting White's motion for summary judgment. See HCBeck, 284 S.W.3d
at 360. We affirm the judgment.


 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: August 4, 2011
1. An OCIP is a program implemented by the owner of a construction site that is "designed
to secure insurance, including workers' compensation insurance, at a reasonable price for all workers
at the construction site." Briggs v. Toyota Mfg. of Tex., 337 S.W.3d 275, 280 (Tex.
App.--San Antonio 2010, no pet.).
2. Cook argues that a provision of the contract between White and Keystone required
Keystone to provide its own workers' compensation insurance. That provision, however, expressly
concerned "offsite coverage" only. It is therefore irrelevant to this dispute.