

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00163-CV

Helen **LEYENDECKER**,
Appellant

v.

Romeo **URIBE**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CI04433
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed:  January 17, 2018

REVERSED AND REMANDED

Helen Leyendecker filed for divorce from Romeo Uribe, alleging they had an informal marriage. Romeo denied the existence of an informal marriage. In two issues, Helen appeals the trial court's order granting Romeo's traditional motion for summary judgment. In her first issue, Helen contends Romeo failed to establish a rebuttable presumption the parties never agreed to be married, or, in the alternative, that she rebutted the presumption by presenting evidence that raises a fact issue on whether she and Romeo agreed to be married. In her second issue, Helen contends the doctrine of quasi-estoppel does not estop her from claiming an informal marriage to Romeo.

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## BACKGROUND

On March 14, 2016, Helen filed an original petition for divorce, alleging she had an informal (common-law) marriage with Romeo. In her first amended petition, Helen alleged the marriage commenced on January 1, 2000 and that the parties ceased living together on March 3, 2016. Romeo filed an original answer denying the existence of an informal marriage and asserting the affirmative defense of quasi-estoppel.

On September 28, 2016, Romeo filed no-evidence and traditional motions for summary judgment. In the traditional motion for summary judgment, Romeo advanced two arguments. First, Romeo argued that because the parties ceased living together more than two years prior to the filing of the petition, there is a rebuttable presumption the parties never agreed to be married. *See* TEX. FAM. CODE ANN. § 2.401(b) (West 2006). Second, Romeo argued the doctrine of quasi-estoppel precludes Helen from claiming an informal marriage to Romeo because she filed federal income tax returns and enrolled in the Teacher Retirement System of Texas as a single (i.e., unmarried) individual. As part of his summary judgment evidence, Romeo attached his sworn affidavit, a transcript of his testimony given at a hearing on a motion to compel, Helen's IRS account transcript and 1040A forms for the years 2000-2003 and 2006-2015, and Helen's Teacher Retirement System enrollment forms from 2001 and 2013.

The trial court signed an order granting only Romeo's traditional motion for summary judgment. Helen appeals.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). In a

traditional motion for summary judgment, summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015).

A movant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a fact issue to defeat the motion for summary judgment. *Briggs v. Toyota Mfg. of Texas*, 337 S.W.3d 275, 282 (Tex. App.—San Antonio 2010, no pet.). When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## REBUTTABLE PRESUMPTION

In her first issue, Helen contends Romeo failed to conclusively establish that she moved out of their shared residence more than two years prior to the filing of the petition, and thus failed to establish a rebuttable presumption the parties never agreed to be married. In the alternative, Helen contends she presented sufficient evidence to rebut the presumption the parties never agreed to be married.

Section 2.401 of the Family Code provides that if a proceeding to establish the existence of a common-law marriage "is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed" there was no agreement to be married. TEX. FAM. CODE ANN. § 2.401(b).

The parties do not dispute they cohabitated for a number of years.[1] However, the parties do not agree on when Helen and Romeo ceased living together. In her first amended petition, Helen alleged she ceased living with Romeo on March 3, 2016. Romeo attested in a sworn affidavit Helen moved out of the house on November 20, 2011. Additionally, Romeo testified at a hearing on a motion to compel that Helen moved out of the house in 2011. However, Romeo also testified he found Helen's 2013 federal income tax return in the house. Helen's 2013 tax return denotes it was prepared on March 27, 2014. Helen argues Romeo's testimony that he found her 2013 tax return in the house raises a fact issue about whether she moved out of the house in 2011 because it shows she was still living in the house as of March 27, 2014, less than two years prior to the petition's filing.

We conclude Romeo's testimony that he found Helen's 2013 tax return in the house raises no more than a mere surmise or suspicion that Helen did not move out of the house in 2011. *See Foreman v. Whitty*, 392 S.W.3d 265, 274 (Tex. App.—San Antonio 2012) ("Evidence that is mere surmise or suspicion does not amount to more than a scintilla of evidence to raise a material issue of fact."). Other than pointing to Romeo's testimony, Helen did not offer any controverting evidence to support the allegation in her pleading that the parties ceased living together on March 3, 2016. On the other hand, Romeo attested in an affidavit and testified at a hearing that Helen moved out of the house in 2011. Thus, Romeo provided sufficient evidence to establish the parties ceased living together in 2011, more than two years prior to the petition's filing. Because Helen filed for divorce over two years after the parties ceased living together, there is a rebuttable presumption the parties never agreed to be married. *See* TEX. FAM. CODE ANN. § 2.401(b); *Joplin v. Borusheski*, 244 S.W.3d 607, 611 (Tex. App.—Dallas 2008, no pet.).

---

[1] Romeo attested in his affidavit that he and Helen lived together in his residence "on and off" from 2003 to 2011. Helen attested in her affidavit that she and Romeo began living together on January 1, 2000.

## Helen Rebutted the Presumption

Because the evidence gave rise to a rebuttable presumption that the parties never agreed to be married, Helen bore the burden to "produce sufficient evidence of an agreement to be married to rebut the statutory presumption." *Joplin*, 244 S.W.3d at 611. To establish an agreement to be married, the evidence must show "the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife, as opposed to a temporary cohabitation that may be ended by either party." *In Interest of J.J.F.R.*, No. 04-15-00751-CV, 2016 WL 3944823, at *4 (Tex. App.—San Antonio July 20, 2016, no pet.) (mem. op.); *In Interest of C.M.V.*, 479 S.W.3d 352, 360 (Tex. App.—El Paso 2015, no pet.). A proponent may prove an agreement to be married by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Proof of cohabitation and representations to others that the couple are married may constitute circumstantial evidence of an agreement to be married. *Id.*; *In Interest of C.M.V.*, 479 S.W.3d at 360. However, the circumstances of each case must be determined based upon its own facts. *Russell*, 865 S.W.2d at 933.

Helen submitted the following summary judgment evidence:

(1) Helen's affidavit wherein she attested she and Romeo agreed to be married on January 1, 2000, they lived together as husband and wife, and they represented to others they were married.

(2) A Progress Note, dated November 1, 2000, as part of Helen's medical records from University Health System hospital, stating, "Mr. Uribe (her husband) stated that he would be responsible for his wife … He wrote a note stating this, in the presence of Mr. Vela and the RN supervisor." Following the Progress Note is a handwritten note signed by Romeo, stating "I Romeo A. Uribe, being of sound mind, assume full [and] complete responsibility for the actions of my wife (and health and well being) Helen A. Leyendecker Uribe …"

(3) Several medical forms from Doctors Hospital of Laredo for "Helen A. Uribe" (including Condition of Admission and Authorization of Medical Treatment, Verification of Patient's Rights, and Advanced Directive Acknowledgment) signed by Romeo A. Uribe as Helen's spouse on May 24, 2009.

(4) Helen's IRS account transcript from 2000 to 2015, showing Helen filed her 2004 and 2005 federal income tax returns as "married filing separate" and provided her spouse's Social Security number.

(5) Proof of Dental Coverage from Dearborn National for "Helen Uribe," showing Romeo Uribe, listed as Helen's spouse, was covered on Helen's family dental insurance plan from September 1, 2009 to August 31, 2011. The dental insurance records show benefits incurred and paid by Dearborn National to Romeo under the dental plan.

(6) The affidavit of Dr. Gilbert Meadows, M.D., in which Dr. Meadows attested he was the orthopedic physician for both "Helen Leyendecker-Uribe" and Romeo Uribe, that he personally knew Helen and Romeo as husband and wife, that Romeo stated to him during his medical visits that Helen was his wife, and that he witnessed Helen and Romeo addressing each other as husband and wife and conducting themselves as such. Dr. Meadows attached a follow-up office visit note, dated April 23, 2003, for "Helen A. Uribe," in which Dr. Meadows wrote that he discussed the risks and benefits of a surgical procedure with "Ms. Uribe" and her husband.

(7) The affidavit of Rojelio Zuniga, in which Rojelio attested he was employed by Romeo for approximately seventeen years, that he personally witnessed Romeo introduce Helen as his wife on many occasions, that Romeo would often speak of Helen as his wife, and that Romeo once installed a decal that read "Helen Leyendecker-Uribe" on one of the offices in Romeo's automotive shop in which Helen tutored school children.

(8) The affidavits of Eveldina "Mina" Castillo and Russell Flores, in which each attested they heard Romeo refer to Helen as his wife.

(9) The affidavit of Ricardo Gomez, Helen's son, in which Ricardo attested that on or about January 1, 2000, Helen called to tell him she had just married Romeo, that in 2000 Helen and Romeo began living together, and that since January 2000 he has considered Romeo his step-father.

In sum, Helen attested she and Romeo agreed to be married, lived together as husband and wife, and represented to others they were married. Helen produced affidavits of four individuals who attested they heard Romeo refer to Helen as his wife. Helen produced documentary evidence spanning eleven years showing that Romeo held himself out as Helen's husband; namely, by making written representations to two hospitals and accepting benefits as Helen's husband under her dental plan. Romeo's handwritten, signed letter to University Health System demonstrates Romeo's present intent to be married to Helen. The evidence also shows Helen adopted Romeo's last name and that Romeo referred to Helen as "Helen A. Leyendecker Uribe."

We conclude Helen produced sufficient summary judgment evidence to raise a genuine issue of material fact as to whether the parties agreed to be married. Helen presented evidence, both direct and circumstantial, that Romeo "intended to have a present, immediate, and permanent marital relationship" with Helen. *In Interest of J.J.F.R.*, 2016 WL 3944823, at *4. *See also In re Marriage of Hallgarth*, No. 07–01–0013–CV, 2001 WL 574833, at *2 (Tex. App.—Amarillo May 29, 2001, no pet.) (per curiam, not designated for publication) (holding that testimony by wife that husband asked her to get married, together with "the evidence concerning their 15 year period of cohabitation, their use of the same last name, their representations to third parties that they were married, and the statement to hospital officials by [the husband] that [the wife] was his wife to gain her admission into the hospital," was more than a scintilla of evidence they had agreed to be married).

Parties alleging an informal marriage have successfully rebutted the statutory presumption with less evidence than that produced by Helen in this case. *See Matter of Marriage of Farjardo*, No. 14-15-00653-CV, 2016 WL 4206009, at *3 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, no pet.) (mem. op.); *In Interest of J.J.F.R.*, 2016 WL 3944823, at *5–*6. In *Matter of Marriage of Farjardo*, the petitioner testified she believed respondent agreed to be married, that she lived with him for twelve years, and that he introduced her as his wife on several occasions. *Matter of Marriage of Farjardo*, 2016 WL 4206009, at *3. Petitioner also presented three years of tax returns filed jointly by her and respondent as spouses. *Id.* at *1, *3. The court held this evidence presented a question of fact on whether the parties agreed to be married, and thus held petitioner rebutted the presumption under Texas Family Code Section 2.401(b). *Id.* at *3–*4. In *In Interest of J.J.F.R.*, this court held petitioner's testimony that she and respondent agreed to be married and began living together as husband and wife when they were expecting their first child was sufficient evidence to

rebut the statutory presumption the parties never agreed to be married. *In Interest of J.J.F.R.*, 2016 WL 3944823, at *5–*6.

Because Helen's summary judgment evidence raised a genuine issue of material fact on whether the parties agreed to be married, Helen rebutted the statutory presumption under Texas Family Code Section 2.401(b). *See Matter of Marriage of Farjardo*, 2016 WL 4206009, at *4. Accordingly, we sustain Helen's first issue.

## QUASI-ESTOPPEL

In her second issue, Helen contends the doctrine of quasi-estoppel applies only where a contract is at issue, and because there is no contract at issue between Helen and Romeo, quasi-estoppel is inapplicable to this case. In the alternative, Helen contends Romeo failed to prove he is entitled to the defense as a matter of law.

Romeo's second argument in his traditional motion for summary judgment was that the doctrine of quasi-estoppel precluded Helen from claiming an informal marriage to Romeo because she filed federal tax returns and enrolled in the Teacher Retirement System of Texas as a single (i.e., unmarried) individual. In support of this defense, Romeo presented Helen's IRS account transcript and 1040A forms for the years 2000-2003 and 2006-2015. The IRS documents show that for tax years 2000 to 2003, Helen filed her federal tax returns as "head of household." For tax years 2006 to 2015, Helen filed as single. Romeo also presented Helen's Teacher Retirement System enrollment forms from 2001 and 2013 in which Helen is identified as single.

Quasi-estoppel is an equitable doctrine that operates as an affirmative defense. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863–64 (Tex. 2000); *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 346 (Tex. App.—San Antonio 2007, pet. denied). "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez*, 22 S.W.3d at 864. "The doctrine applies when it would be unconscionable to allow

a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.*; *see also Schauer v. Von Schauer*, 138 S.W. 145, 149–50 (Tex. Civ. App.—Austin 1911, writ ref'd) ("Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim or conduct to the prejudice of another.") (internal quotations omitted). Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).

The quasi-estoppel defense has been framed as relevant to suits involving contracts between parties. *See Forney*, 349 S.W.3d at 268 ("Quasi-estoppel (estoppel by contract) is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits."). "[Q]uasi-estoppel forbids a party from accepting the benefits *of a transaction* and then subsequently taking an inconsistent position to avoid *corresponding obligations or effects*." *Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex. App.—Fort Worth 2011, no pet.) (emphasis added).

Texas courts have recognized that "[q]uasi-estoppel requires mutuality of parties and may not be asserted by or against a 'stranger' to the transaction that gave rise to the estoppel." *Parker v. Glasgow*, No. 02-15-00378-CV, 2017 WL 2686474, at *3 (Tex. App.—Fort Worth June 22, 2017, no pet.) (mem. op.). *See also Thomas v. C & M Jones Invs., LP*, No. 03–14–00374–CV, 2016 WL 3924429, at *4 n.14 (Tex. App.—Austin July 15, 2016, no pet.) (mem. op.); *Deutsche Bank Nat'l Trust Co. v. Stockdick Land Co.*, 367 S.W.3d 308, 315 n.13 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (op. on reh'g).

In this case, there is no mutuality of parties. Helen represented to the IRS that she was single, not to Romeo. Romeo, as a stranger to the transaction between Helen and the IRS, cannot

claim that Helen's representations to the IRS precludes her from alleging in an unrelated lawsuit that she and Romeo are informally married. *See Parker*, 2017 WL 2686474, at \*3–\*4. The same is true regarding Helen's representations to the Teacher Retirement System of Texas. Therefore, we conclude the doctrine of quasi-estoppel does not preclude Helen from claiming an informal marriage exists between her and Romeo.

Although representations made to governmental entities regarding marital status do not estop a party from later claiming in an unrelated suit the existence or non-existence of an informal marriage, trial courts may properly consider such representations as evidence either supporting or refuting a claim of informal marriage. *See Small v. McMaster*, 352 S.W.3d 280, 286 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (evidence that alleged wife filed all her tax returns as "single" during the time the parties were allegedly married weighed against finding of an informal marriage); *Quinn v. Milanizadeh*, No. 01–07–00489–CV, 2008 WL 1828327, at \* 5 (Tex. App.—Houston [1st Dist.] Apr. 24, 2008, no pet.) (mem. op.) (concluding that keeping separate bank accounts and filing tax returns as single persons did not negate existence of informal marriage but went to the weight of the evidence). Even considering these representations, however, having reviewed all of the summary judgment evidence, we still conclude Helen raised a genuine issue of material fact on whether the parties agreed to be married.

Accordingly, we sustain Helen's second issue.

### CONCLUSION

For the foregoing reasons, we conclude the trial court erred by granting Romeo's traditional motion for summary judgment. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

Irene Rios, Justice