

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00330-CV

Gerardo **RICO**,
Appellant

v.

**JUDSON LOFTS, LTD.**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-03141
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  May 29, 2013

REVERSED AND REMANDED

Gerardo Rico appeals the trial court's summary judgment in favor of Judson Lofts, Ltd. in Rico's common law negligence suit against Judson Lofts, Ltd. for injuries he sustained in a workplace incident.  The crux of Rico's argument on appeal is that Judson Lofts, Ltd. was not protected by the exclusive remedy provision of the Texas Workers' Compensation Act.  For the reasons given below, we reverse the trial court's judgment and remand the cause to the trial court.

## BACKGROUND

Appellant Gerardo Rico sustained injuries when he fell out of a backhoe while unloading construction materials on Appellee Judson Lofts, Ltd.'s premises. At the time of the incident, Rico was employed by Nationwide Staff Leasing. Judson Lofts, LLC and Nationwide entered into a written service agreement whereby Judson Lofts, LLC leased employees from Nationwide. The parties dispute whether "Judson Lofts, LLC" exists and whether Judson Lofts, Ltd. should be considered the proper party to this contract. Pursuant to the Service Agreement, Nationwide provided workers' compensation insurance for Nationwide and Judson Lofts, LLC employees, including Rico. After Rico was injured, he received workers' compensation benefits under this policy.

Rico brought a common law negligence suit against Judson Lofts, Ltd. to recover for the injuries he sustained in the workplace incident. Rico asserted that Judson Lofts, Ltd. was not covered by workers' compensation insurance because Nationwide's workers' compensation insurance policy (the SUA[1] policy) named Judson Lofts, LLC, not Judson Lofts, Ltd., as the insured party. Rico alleged that because Judson Lofts, Ltd. was not covered by a workers' compensation policy, it was subject to Rico's common law negligence claim. Judson Lofts, Ltd. moved for traditional summary judgment on its affirmative defense of workers' compensation coverage. Judson Lofts, Ltd. contended that as a co-employer, and pursuant to the Staff Leasing Services Act (SLSA), the exclusive remedy provision of the Texas Workers' Compensation Act (TWCA) shielded it from Rico's common law liability claims. The trial court granted Judson Lofts, Ltd.'s motion for summary judgment.

On appeal, Rico asserts that Judson Lofts, Ltd. was not covered by the SUA policy and was not a party to the Service Agreement. Rico first argues that an entity by the name of Judson

---

[1] The record does not define "SUA."

Lofts, LLC, not Judson Lofts, Ltd., contracted with Nationwide. He then contends that Judson Lofts, Ltd. is not protected by the exclusive remedy provision of the TWCA because the Service Agreement failed to satisfy various requirements of the SLSA. For these reasons, Rico contends that Judson Lofts, Ltd. failed to establish it was covered by workers' compensation insurance so as to receive the protection of the exclusive remedy provision of the TWCA, thus failed to conclusively establish all the elements of its affirmative defense, and therefore was not entitled to summary judgment as a matter of law.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Vela v. GRC Land Holdings, Ltd.*, 383 S.W.3d 248, 250 (Tex. App.—San Antonio 2012, no pet.); *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 162 (Tex. App.—San Antonio 2011, no pet.). In our review, we "must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *accord Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.).

The movant for traditional summary judgment has the burden to show "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Romo*, 48 S.W.3d at 269. "The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *accord Briggs v. Toyota Mfg. of Tex.*, 337 S.W.3d 275, 285 (Tex. App.—San Antonio 2010, no pet.).

"A defendant moving for summary judgment on [an] affirmative defense . . . must prove conclusively the elements of that defense." *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 464 (Tex. 2000); *accord Se. Tex. Indus. v. Helmerich & Payne Int'l Drilling Co.*, 70 S.W.3d 181, 184 (Tex. App.—San Antonio 2001, no pet.). A defendant's motion for summary judgment based on an affirmative defense must not be granted if the defendant fails to conclusively establish each element of its affirmative defense. *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 429–30 (Tex. App.—San Antonio 1993, writ denied).

## TWCA & EXCLUSIVE REMEDY PROVISION

The TWCA was adopted to benefit employers as well as employees, and should be construed liberally in favor of coverage. *Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012). It provides employees with prompt remuneration for injuries sustained in the course and scope of their employment, without requiring the employee to prove the employer's fault. *See* TEX. LAB. CODE ANN. § 406.031(a)(1)–(2) (West 2006); *Briggs*, 337 S.W.3d at 282. For employers, the TWCA limits liability through its exclusive remedy provision. *See* TEX. LAB. CODE ANN. § 408.001(a); *Briggs*, 337 S.W.3d at 282.

The TWCA states that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage." TEX. LAB. CODE ANN. § 408.001(a); *Briggs*, 337 S.W.3d at 282. This provision is an affirmative defense that, if proven, protects employers from certain common-law claims of their employees. *Briggs*, 337 S.W.3d at 282. "An employee may have more than one employer within the meaning of the TWCA, and each employer who subscribes to workers' compensation insurance may raise the exclusive-remedy provision as a bar to claims about the injury." *Casados*, 358 S.W.3d at 242; *accord Briggs*, 337 S.W.3d at 282.

## INSURED ENTITY

Rico argues that Judson is not protected by the exclusivity bar of the workers' compensation provision of the TWCA because Judson Lofts, Ltd. was not a party to the Service Agreement and was not covered by a workers' compensation insurance policy. Rico contends that an entity by the name of Judson Lofts, LLC, not Judson Lofts, Ltd., contracted with Nationwide. For these reasons, Rico asserts that there is at least a fact question on whether Judson Lofts, LLC and Judson Lofts, Ltd. are the same entity.

This case presents a problem analogous to that addressed in misnomer cases. "A misnomer occurs when a party misnames itself or another party, but the correct parties are involved."[2] *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam). "Typically, misnomer cases involve a plaintiff who has misnamed the defendant, and a petition involving this type of misnomer is nonetheless effective, for limitations purposes, when filed, with any subsequent amendment relating back to the date of the original filing." *Id.* at 326. In misnomer cases, courts are flexible "because the party intended to be sued has been served and put on notice that it is the intended defendant." *Id.* When the plaintiff has misnamed itself, "the rationale for flexibility . . . applies with even greater force." *Id.*

In its motion for summary judgment, Judson Lofts, Ltd. attached evidence to show that Judson Lofts, LLC and Judson Lofts, Ltd. are the same entity. This evidence includes a letter from the IRS issuing a federal Employer Identification Number (EIN) to Judson Lofts, Ltd. In the SUA policy, the insured entity is identified as Judson Lofts, LLC, but the EIN is that of Judson Lofts, Ltd. The Nationwide Client Addition/Termination Vendor Notification report identifies Judson Lofts, LLC as a new client and lists the EIN for Judson Lofts, Ltd. Likewise,

---

[2] Misnomer is different from misidentification in that misidentification "arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity." *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009).

the Service Agreement identifies Judson Lofts, LLC as the Customer and lists the EIN issued to Judson Lofts, Ltd. Judson Lofts, Ltd. also provided the sworn affidavits of Phillip Allen, manager of Judson Lofts, Ltd., and Thomas Redclift, CEO of RRR Staff Leasing, Inc. d/b/a/ Nationwide. Allen stated that Judson Lofts, LLC has never existed and that the listing of Judson Lofts, Ltd. as such is merely a typographical error. Redclift stated that Nationwide only leased employees to a single Judson Lofts entity and the evidence shows that the only EIN in Nationwide's documents is that which the IRS issued to Judson Lofts, Ltd.

Further, Judson Lofts, Ltd. produced two invoices for gross wages and burden rates from Nationwide to Judson Lofts, LLC. The invoices, dated July 18, 2008 and July 25, 2008, reflected total balances due of $10,438.04 and $10,363.38, respectively. The Service Agreement required that invoices from Nationwide be paid by Judson Lofts, LLC's corporate check. However, Judson Lofts, Ltd.'s summary judgment evidence included a statement from a Judson Lofts, Ltd. account showing payments to Nationwide dated July 18, 2008 and July 25, 2008, in the amounts of $10,438.04 and $10,363.38, respectively. Finally, Rico does not dispute that he received workers' compensation benefits under the SUA policy—the policy issued to Nationwide, which listed Judson Lofts, LLC as its client company and identified Judson Lofts, LLC as having the EIN issued to Judson Lofts, Ltd. *See Adams v. Consol. Underwriters*, 124 S.W.2d 840, 842 (Tex. 1939).

Having reviewed the summary judgment evidence in the light most favorable to Rico, we nevertheless determine that Judson Lofts, Ltd. conclusively established that Judson Lofts, Ltd. and Judson Lofts, LLC are the same entity. *See Se. Tex. Indus.*, 70 S.W.3d at 184. In response to Judson Lofts, Ltd.'s summary judgment evidence, Rico provided no contrary evidence and thus failed to raise a genuine issue of material fact. Therefore, for purposes of our review, we

consider Judson Lofts, Ltd. and Judson Lofts, LLC to be the same entity and refer to this entity as Judson.

THE SERVICE AGREEMENT

Rico contends that Judson is not protected by the exclusive remedy provision of the TWCA because it has not conclusively established that it is covered by workers' compensation insurance in accordance with the SLSA. Specifically, Rico argues that the Service Agreement does not satisfy the requirements of the SLSA because, *inter alia*, the parties did not "actually or contractually share meaningful employment responsibilities" as required by Texas Labor Code section 91.032. Rico further argues that under the Service Agreement, Judson was solely responsible for the direction and control over the adoption of employment and safety policies.

We must determine whether, as a matter of law, the Service Agreement shares the responsibilities set forth in section 91.032. We first consider whether the Service Agreement is ambiguous. *See Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996)

## A. Ambiguity

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *accord Lenape Res. Corp.*, 925 S.W.2d at 574. "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp. v. New ULM Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). However, when a contract's "meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation," the contract is ambiguous and its meaning must be resolved by the fact-finder. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *accord Lenape Res. Corp.*, 925 S.W.2d at 574.

**B.  Staff Leasing Services Act Requirements**

The SLSA applies to all persons offering staff leasing services.  TEX. LAB. CODE ANN. § 91.002(b).  The staff leasing services provider must obtain a license to "engage in or offer staff leasing services in [Texas]."  *Id.* § 91.011.  This person or entity—the "license holder"—assigns its employees to a "client company" pursuant to a written contract.  *See id.* §§ 91.001(3), (11); 91.031(a).  Critical to this appeal, "[t]he [SLSA] contemplates that one workers' compensation policy procured by the staff leasing service company will cover employees leased to a client company, and that both the leasing company and the client may rely on the exclusive remedy provision of the [TWCA]."  *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140 (Tex. 2003); *see Calvasina v. Wal-Mart Real Estate Bus. Trust*, No. SA-09-CA-1024-XR, 2012 WL 4506001, at *24 (W.D. Tex. Sept. 28, 2012).

To qualify under the SLSA, the contract between the license holder and the client company must include certain provisions.  *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 478 (Tex. 2005).  "[The] contract between a staff leasing license holder and its client must provide that the leasing company 'shares, as provided by Subsection (b), with the client company the right of direction and control over employees assigned to a client's worksites.'"  *Id.* (quoting TEX. LAB. CODE ANN. § 91.032(a)(1)).  The contract must also provide that the license holder and client company share "the right to hire, fire, discipline, and reassign the assigned employees."  TEX. LAB. CODE ANN. § 91.032(a)(4); *see DeLeon v. Thos. S. Byrne, Ltd.*, No. 02-10-00438-CV, 2012 WL 42942, at *8 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op.).  Finally, the contract must provide for the sharing of the "right of direction and control over the adoption of employment and safety policies."  TEX. LAB. CODE ANN. § 91.032(a)(5); *see DeLeon*, 2012 WL 42942, at *8.  Notwithstanding other provisions of the SLSA, "a client company retains responsibility for . . . the direction and control of assigned employees as

necessary to conduct the client company's business." TEX. LAB. CODE ANN. § 91.032(b)(1); *accord Wingfoot Enters.*, 111 S.W.3d at 141.

## C. Service Agreement Terms

Under the Service Agreement, Nationwide agreed to provide "assigned Workers and worker-related services," including human resources, to Judson by "assuming certain responsibilities for certain Workers." Judson, in the business of building renovation, agreed to obtain workers from Nationwide. Nationwide's responsibilities are set forth in Article I of the Service Agreement. They principally comprise human resources responsibilities, but include responsibilities for safety and site inspection services and for strict compliance with "all laws, regulations, rules and guidelines established by governmental or quasi-governmental agencies in all aspects of [Nationwide's] industry, including without limitation, labor relations and safety conditions."

Judson's responsibilities are set forth in Article II of the Service Agreement. Like Nationwide, Judson has safety responsibilities. In fact, Article II specifically requires Judson to acknowledge that Nationwide will provide safety consultation and that Judson is to "cooperate in the efforts to make the workplace a safer environment." In Article II, Judson acknowledges that Nationwide is entitled to remove the employees from any unsafe worksite. Article II (1)(c) of the Service Agreement provides that Judson shall be *solely* responsible "in *conjunction* with Article III(a) hereof, [for the] direction and supervision of all Workers" participating in Judson's activities. The Service Agreement does not contain an Article III(a). However, pursuant to Article III(1), Nationwide "expressly *reserves* the right" to discipline or reassign employees provided to Judson. Judson's responsibilities under Article II also include "adherence to all safety laws, regulations, rules and guidelines existing specifically in Customer's business and in

Customer's industry generally, and as required by any governmental agencies or interested insurance carriers" and "to provide safe work conditions and premises for all workers."

    *1.  Right of Direction and Control over the Adoption of Employment and Safety Policies*

    Both Article I and Article II of the Service Agreement require the parties to adhere to safety laws, regulations, rules, and guidelines in Nationwide's business and industry. Likewise, both articles address responsibilities for safety policies. Article I, for example, clearly states that Nationwide "will provide certain safety related services and site inspections." Article II requires Judson to provide safe work conditions and safe premises. Although the word "share"[3] is not used in either article, the language in both articles has only one clear meaning: both Nationwide and Judson have safety responsibilities in accordance with the laws, regulations, rules, and guidelines in Nationwide's business and industry in matters of safety and employment. Thus, the Service Agreement requires that Judson and Nationwide share in the responsibilities for employment and safety policies. Accordingly, we conclude that, as a matter of law, the Service Agreement is not ambiguous in this respect and that, as such, it meets the SLSA requirements regarding sharing of employment and safety policies. *See* TEX. LAB. CODE ANN. § 91.032(a)(5); *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Coker*, 650 S.W.2d at 393.

    *2.  Right of Direction and Control and Right to Hire, Fire, Discipline, and Reassign*

    Article I of the Service Agreement is silent as to Nationwide's responsibilities for directing and controlling the employees; it is also silent as to Nationwide's right to hire, fire, and discipline employees. Therefore, our analysis of this part of the Service Agreement begins with Articles II(1) and III. The pertinent portions of these articles provide:

---

[3] The word "share" is defined as "[d]ivide and distribute in portions amongst a number of recipients; divide up between oneself and another or others." SHORTER OXFORD ENGLISH DICTIONARY 2789 (6th ed. 2007).

ARTICLE II
Customer Responsibilities

(1)     Customer shall be *solely* responsible for the following matters:
. . . .
(c) in *conjunction* with Article III(a) hereof, direction and supervision of all Workers in the course of their participation in Customer's business activities, including establishment of performance standards for such Workers and provision of all customary tools and/or other equipment necessary for performance of required tasks.
. . . .
(g) to evaluate the performance of each Worker periodically and to discharge those Workers whose performance is unsatisfactory to Customer in terms of the standards established in subparagraph (c) above.
. . . .

ARTICLE III
Reservation of Rights

The Corporation expressly *reserves* the following rights:

(1)     the Corporation expressly *reserves* the right to discipline or reassign Workers provided to Customer . . . .

(emphases added).

In determining whether the meaning of this portion of the agreement is ambiguous regarding the sharing requirements of the SLSA, of importance are the definitions of the words "solely," "conjunction," and "reserves." Because none are expressly defined within the Service Agreement, we look at their plain and ordinary meaning. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 751 & n.30 (Tex. 2006) (consulting Webster's New Collegiate Dictionary for meaning of "otherwise").

The word "solely" in Article II means "[a]s a single person or thing; without any other as an associate, partner, etc.; alone" or "[o]nly, merely, exclusively." SHORTER OXFORD ENGLISH DICTIONARY 2911 (6th ed. 2007). The word "conjunction" used in part (c) of that same article means "[t]he action or an act of conjoining; the fact or condition of being conjoined; (a) union; (a) connection." *Id.* at 492. In the context of Article II, the plain meanings of these words lead

- 11 -

us to conclude that Judson's sole responsibility for the direction and supervision of the employees is modified pursuant to Article III(a). The problem is that Article III(a) does not exist. Accordingly, the Service Agreement potentially provides that Judson is solely responsible for the direction and supervision of the employees.

However, we must look at the contract as a whole. *See Coker*, 650 S.W.2d at 394. Article III(1) allows Nationwide to reserve its right to discipline or reassign employees. The word "reserve" means "[k]eep back or set aside for future use or for a later occasion." SHORTER OXFORD ENGLISH DICTIONARY 2544. A reasonable interpretation is that by reserving the right to discipline or reassign workers, by implication Nationwide reserved some right of employee control. What is not clear from the document, however, is whether the right of control includes firing and hiring responsibilities. It is likewise unclear whether Nationwide's reservation of the right to discipline or reassign workers was intended as merely a postponement of the responsibilities for a future date or was intended to be a shared responsibility at all times. Thus, the meaning of these provisions is uncertain and "reasonably susceptible to more than one interpretation." *See Heritage Res., Inc.*, 939 S.W.2d at 121; *Lenape Res. Corp.*, 925 S.W.2d at 574.

## D. Service Agreement is Ambiguous as to Sharing of Certain Responsibilities

For these reasons, we conclude that the meaning of Articles II and III is ambiguous as to whether Nationwide shares with Judson the "right of direction and control over [the] employees" and "the right to hire, fire, discipline, and reassign [them]." *See* TEX. LAB. CODE ANN. § 91.032(a)(1), (4); *see also Garza*, 161 S.W.3d at 478; *Heritage Res., Inc.*, 939 S.W.2d at 121; *Lenape Res. Corp.*, 925 S.W.2d at 574. Because this portion of the Service Agreement is ambiguous, it raises a genuine issue of material fact and we must reverse the trial court's summary judgment. *See Coker*, 650 S.W.2d at 393–94.

## CONCLUSION

After reviewing the evidence de novo and in the light most favorable to Rico, we determine that Judson conclusively established that Judson Lofts, Ltd. and Judson Lofts, LLC are the same entity, and that Rico failed to raise a genuine issue of material fact to the contrary. Because the Service Agreement is ambiguous as to whether the parties shared responsibilities as required by the SLSA, we conclude that Judson failed to meet its burden to conclusively establish all of the elements of its SLSA affirmative defense of workers' compensation insurance. Therefore, the trial court erred in granting Judson's motion for traditional summary judgment. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.[4]

Patricia O. Alvarez, Justice

---

[4] Any further proceedings in this matter must be consistent with our determination that Judson Lofts, Ltd. is the true entity referenced in the Service Agreement.