

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00291-CV

Roberto Avila **RODRIGUEZ**,
Appellant

v.

**PANTHER EXPEDITED SERVICES, INC.**,
Amigo Staffing, Inc., and Dicex International, Inc.,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2015CVT001668 D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  July 31, 2018

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant Roberto Avila Rodriguez brought a negligence action against Amigo Staffing, Inc., Dicex International, Inc., and Panther Expedited Services, Inc., seeking to recover for injuries he allegedly sustained while operating a forklift.  Rodriguez subsequently nonsuited Amigo Staffing, but Dicex filed a third-party petition against Amigo Staffing.  Dicex filed a traditional motion for summary judgment, Panther filed a no evidence motion for summary judgment, and Amigo Staffing filed traditional and no evidence motions for summary judgment as to Dicex's third-party claims.  The trial court granted motions for summary judgment filed by Dicex and

Panther, dismissed as moot Dicex's third-party claims against Amigo Staffing, and rendered a take nothing judgment. On appeal, Rodriguez contends the trial court erred in granting summary judgment in favor of Dicex and Panther, and because it erred in granting summary judgment in favor of Dicex, also erred in dismissing as moot Dicex's third-party claims against Amigo Staffing. We affirm the trial court's summary judgment in favor of Panther. However, we reverse the summary judgment in favor of Dicex, reverse the dismissal of Dicex's third-party claims against Amigo Staffing, and remand this portion of the matter to the trial court for further proceedings consistent with our opinion.

## BACKGROUND

The record shows Rodriguez was employed as a forklift operator by Amigo Staffing, which claims to be a temporary employment service ("TES"). Rodriguez was assigned to operate a forklift at Dicex, which operates a freight and cargo warehouse and distribution center. The assignment was made pursuant to an agreement for temporary employment services between Amigo Staffing and Dicex. According to Rodriguez's petition, on the day he was injured, he was using a forklift owned by Dicex to move cargo from a tractor-trailer owned or controlled by Panther into a Dicex warehouse. Rodriguez claimed that because of the way some of the cargo was positioned inside the tractor-trailer, he "was forced to drive onto the loading dock with the forklift in reverse." Rodriguez alleged that after he successfully moved several loads from the tractor-trailer to the warehouse, the tractor-trailer, which had not been properly secured by drivers Tammy Rheudean Ellis and Thomas Jay Daly, moved forward, creating a gap between the tractor-trailer and the warehouse. According to Rodriguez, as he was backing the forklift onto the loading dock, the forklift fell into the gap. Rodriguez claimed he and the forklift "suddenly and violently fell backwards onto the concrete below as the cargo fell on top of the forklift." Rodriguez alleged he was rendered unconscious and suffered serious injuries.

The record shows that after he was injured, Rodriguez accepted benefits based on a workers' compensation insurance policy maintained by Amigo Staffing. Nevertheless, he filed suit against Amigo Staffing, Dicex, Panther, Ellis, and Daly for negligence, seeking to recover damages for his injuries. Rodriguez later filed a notice of nonsuit with regard to Amigo Staffing, and the trial court signed an order granting the nonsuit. Thereafter, Dicex filed a third-party petition against Amigo Staffing, bringing Amigo Staffing back into the lawsuit.

Ultimately, Dicex, Panther, and Amigo Staffing filed motions for summary judgment. Rodriguez filed responses to the motions filed by Dicex and Panther, and Dicex filed a response to the motion filed by Amigo Staffing. After a hearing, the trial court rendered summary judgment in favor of Dicex and Panther and, as noted above, dismissed as moot Dicex's third-party claim against Amigo Staffing.[1] Thereafter, Rodriguez perfected this appeal.

## ANALYSIS

In this appeal, Rodriguez challenges the summary judgments granted in favor of Panther and Dicex. He contends summary judgment was improper with regard to both Dicex and Panther because he produced more than a scintilla of evidence that precluded either summary judgment.

### *Dicex's Traditional Motion for Summary Judgment*

Dicex filed a traditional motion for summary judgment. In its motion, Dicex asserted Rodriguez's claims were barred under the exclusive remedy provision in the Texas Workers' Compensation Act ("TWCA"). Specifically, Dicex argued it produced summary judgment evidence showing that at the time of the injury, Amigo Staffing was a TES that carried workers' compensation insurance covering Rodriguez, and Dicex was Amigo Staffing's client pursuant to

---

[1] The record does not include a disposition of Rodriguez's claims against Ellis or Daly. However, the trial court granted severances, thereby rendering the summary judgments final despite the absence of a disposition of Rodriguez's claims against Ellis and Daly. Ellis and Daly are not parties to this appeal.

a temporary services employment agreement. Therefore, under Chapter 93 of the Texas Labor Code, the workers' compensation policy held by Amigo Staffing covered any injuries sustained by Rodriguez during his assignment with Dicex, and any action pursued against Dicex was barred by the exclusive remedy provision of the TWCA. In response and on appeal, Rodriguez contends summary judgment was improper because: (1)Amigo Staffing is not engaged in temporary employment services pursuant to Chapter 93 of the Labor Code, (2) Amigo Staffing's worker' compensation policy does not cover Dicex, and (3) Amigo Staffing is not a licensed professional employer organization pursuant to Chapter 91 of the Labor Code.

*Standard of Review*

We review a traditional summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment motion is properly granted when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Cantey Hanger*, 467 S.W.3d at 481; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Dorsett*, 164 S.W.3d at 661). When, as here, a defendant moves for summary judgment based on an affirmative defense, such as the exclusive remedy provision of the TWCA, the defendant has the burden to prove each essential element of that defense. *See id.*; *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Rodriguez v. Lockhart Contracting Services, Inc.*, 499 S.W.3d 48, 53 (Tex. App.— San Antonio 2016, no pet.). If the defendant fails to prove as a matter of law each essential element of the asserted affirmative defense, summary judgment is improper. *Rodriguez*, 499 S.W.3d at 53

(citing *Rico v. Judson Lofts, Ltd.*, 404 S.W.3d 762, 765 (Tex. App.—San Antonio 2013, pet. denied)).

*Applicable Law*

The TWCA limits an employer's liability for injuries sustained by its employees through the exclusive remedy provision, which states that "[r]ecovery of workers' compensation is the exclusive remedy of an employee covered by workers' compensation insurance coverage … for … a work-related injury sustained by the employee." TEX. LAB. CODE ANN. § 408.001(a) (West 2015); *see Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012); *Rodriguez*, 499 S.W.3d at 53. It is intended to benefit both employers and employees. *Casados*, 358 S.W.3d at 241; *Rodriguez*, 499 S.W.3d at 53. For employees, it provides them with compensation for injuries sustained in the course and scope of their employment, without proof the injuries were the fault of the employer and without regard to any negligence of coworkers. *Casados*, 358 S.W.3d at 241 (citing TEX. LAB. CODE ANN. § 406.031; *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 350 (Tex. 2009); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 511 (Tex. 1995)); *Rodriguez*, 499 S.W.3d at 53. For employers, their liability is limited. *Casados*, 358 S.W.3d at 241 (citing *Garcia*, 893 S.W.2d at 510–11). Because the TWCA benefits both employers and employees, the Texas Supreme Court has held it should be construed "liberally in favor of coverage." *Casados*, 358 S.W.3d at 241; *Rodriguez*, 499 S.W.3d at 53.

The exclusive remedy provision is an affirmative defense. *Rodriguez*, 499 S.W.3d at 53 (citing *Rico*, 404 S.W.3d at 765). If proven, the provision protects employers from certain common law claims of their employees, including negligence — the claim brought by Rodriguez against Dicex. *Id.* Employees are covered by workers' compensation insurance — and therefore subject to the exclusive remedy provision — if their employers have approved insurance policies covering

the payment of workers' compensation benefits to their employees. *See Casados*, 358 S.W.3d at 242; *Rodriguez*, 499 S.W.3d at 53.

An employee may also be covered by workers' compensation insurance — and therefore subject to the exclusive remedy provision of the TWCA — if he enters employment with a TES that has elected to obtain workers' compensation insurance coverage. *See* TEX. LAB. CODE ANN. § 93.004(a). Section 93.004(a) of the Labor Code specifically states that a certificate of insurance showing a TES has workers' compensation insurance "constitutes proof of workers' compensation insurance coverage for the temporary employment service *and the client* of the temporary employment service with respect to all employees of the temporary employment service assigned to the client. *Id.* (emphasis added). Section 93.004(b) goes on to state that if a TES has elected to carry workers' compensation insurance, both the TES and a client of the TES are subject to the exclusive remedy provision found in section 408.001(a) of the TWCA. *Id.* § 93.004(b); *see also id.* § 408.001(a).

*Application*

As set out above, in its motion for summary judgment, and now on appeal, Dicex argues it proved as a matter of law that: (1) Dicex was a client of Amigo Staffing, and (2) Amigo Staffing was a TES that carried workers' compensation insurance. Dicex contends, therefore, that pursuant to section 93.004(b), Rodriguez's claims are barred by the exclusive remedy provision of the TWCA. *See* TEX. LAB. CODE ANN. § 93.004(b), § 408.001(a). This was the only ground upon which Dicex sought summary judgment.

However, we hold section 93.004 is not applicable here. The section was added during the 83rd session of the Texas Legislature. Prior to its enactment, there was no specific statutory provision governing application of workers' compensation insurance to clients of a TES. When it enacted section 93.004, the Legislature specifically stated:

> The change in law made by this Act *applies only to a claim based on a work-related injury that occurs on or after the effective date of this Act.* A claim based on a worker-related injury that occurs before the effective date of this Act is governed by the law in effect on the date the injury occurred, and the former law is continued in effect for that purpose.

Act of May 16, 2013, 83rd Leg. R.S., ch. 321, 2013 Tex. Gen Laws 1082, § 2 (current version at TEX. LAB. CODE ANN. § 93.004) (emphasis added).

It is undisputed — based on the appellate record and in statements contained in the briefs of all parties — that the work-related injury upon which Rodriguez's claims are based occurred on May 19, 2013, almost four months *before* the effective date of section 93.004. Thus, section 93.004(b) was not effective at the time of the injury, and therefore, is inapplicable to this case. *See id.* In its motion for summary judgment, Dicex solely relied on the exclusive remedy provision of the TWCA via section 93.004(b) of the Labor Code as the basis for summary judgment. However, because the statute was inapplicable, it could not form the basis for the trial court's judgment in favor of Dicex.

Appellate courts will not affirm a summary judgment granted on grounds not specifically presented in the motion for summary judgment. *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992). As this court stated in *Rentfro v. Cavazos*, "even if a nonmovant fails to except, respond, or obtain a ruling, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself," summary judgment is improper. No. 04-10-00617-CV, 2012 WL 566364, at * (Tex. App.—San Antonio Feb. 15, 2012, pet. denied) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342–43 (Tex. 1993) (plurality op.)); *see Coastal Cement Sand Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 565 (Tex. App.—Houston [14th Dist.] pet denied) (holding motion for summary judgment must expressly present grounds upon which it is made and stand or fall on grounds expressly presented therein) (citing *McConnell*, 858 S.W.2d at 341). We hold that because Dicex's sole basis for summary judgment,

as stated in its motion, was the exclusive remedy provision of the TWCA via section 93.004(b) of the Labor Code, summary judgment was improper.

### *Panther's No Evidence Motion for Summary Judgment*

Panther filed a no evidence motion for summary judgment. Panther asserted, with regard to Rodriguez's respondeat superior claim, that there was no evidence Panther employed Tammy Rheudean Ellis and Thomas Jay Daly, the drivers who allegedly moved the tractor-trailer that created that gap into which Rodriguez and the forklift fell. As for Rodriguez's negligence claim, he claimed Panther was negligent in failing to: (1) properly train its employees on safety procedures and to warn others on a worksite when a dangerous situation arises; (2) properly educate its employees regarding the dangers of failing to properly secure a trailer during the loading and unloading process; (3) provide employees with necessary equipment; (4) properly inspect and maintain its tractor-trailers to provide employees with equipment in good working order; and (5) create or install adequate safety procedures, checklists, protocols, and processes for employees to adhere to.

In response to Panther's assertion that there was no evidence to support Rodriguez's claim of respondeat superior, Rodriguez argued below, and now argues on appeal, that Panther is vicariously liable as a matter of law based on the statutory employment doctrine, which creates a nondelegable duty under federal law applicable to interstate motor carriers. Alternatively, Rodriguez contends he presented evidence that Panther retained control over the drivers — Ellis and Daly — so Panther is liable even if the drivers are independent contractors. As for his negligence claim, Rodriguez refers back to the statutory employment doctrine as evidence of a legal duty. As evidence of breach, Rodriguez points to the manner in which the incident occurred and the distance the tractor-trailer traveled from the loading dock as some evidence that (1) the parking brake was "not up to the required federal standards," or (2) the tractor-trailer was moved

by Ellis or Daly without having first ensured "no one was still unloading the truck." Rodriguez also asserts there was evidence the breach caused his injuries because he "had not experienced any injuries or pain in the areas injured in the subject incident prior to the subject incident."

*Standard of Review*

We review do novo a trial court's order granting a no evidence motion for summary judgment. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *Davis v. Canyon Creek Estates Homeowners Ass'n*, 350 S.W.3d 301, 308 (Tex. App.—San Antonio 2011, pet. denied). When reviewing a no evidence motion with a traditional motion, we view the evidence in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *Sudan*, 199 S.W.3d at 292; *Davis*, 350 S.W.3d at 308.

A no evidence summary judgment is, in essence, a pretrial directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Tatsch v. Chrysler Grp., LLC and Infinity Cnty. Mut. Ins. Co.*, No. 04-13-00757-CV, 2014 WL 6808637, at *2 (Tex. App.—San Antonio Dec. 3, 2014, pet. denied) (mem. op.). After an adequate time for discovery passes, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim. *See* TEX. R. CIV. P. 166a(i); *Tatsch*, 2014 WL 6808637, at *7; *All Am. Tel., Inc. v. USLD Commons.*, 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied). The moving party must specifically state the elements for which no evidence exists. TEX. R. CIV. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310; *Tatsch*, 2014 WL 6808637, at *7. To defeat a no evidence motion for summary judgment, the nonmovant must produce more than a scintilla of evidence on each challenged element. *DTND Sierra Invs., LLC v. Deutsche Bank Nat'l Trust Co.*, No. 04-12-00817-CV, 2013 WL 4483436, at *2 (Tex. App.—San Antonio Aug. 21, 2013, pet. denied) (mem. op.); *Martinez v. Leeds*, 218 S.W.3d 845, 848 (Tex. App.—El Paso 2007, pet. denied). As the supreme court has stated, more

than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (same). Less than a scintilla of evidence exists when the evidence is so weak as to create mere surmise or suspicion of a fact. *King Ranch*, 118 S.W.3d at 751; *Midwest Emp'rs Cas. Co. v. Harpole*, 293 S.W.3d 770 (Tex. App.—San Antonio 2009, no pet.). The trial court must grant the no evidence motion if the nonmovant fails to bring forth more than a scintilla of summary judgment evidence to raise a genuine issue of material fact as to the challenged elements. TEX. R. CIV. P.166a(i); *DTND Sierra Invs.*, 2013 WL 4483436, at *2; *Tatsch*, 2014 WL 6808637, at *2.

*Applicable Law*

As previously noted, Rodriguez alleged Panther was liable under the doctrine of respondeat superior based on the negligence of its employees, Ellis and Daly. Under the theory of respondeat superior, an employer may be vicariously liable for the negligence of an employee, even though the employer itself was not negligent. *See Goodyear Tire and Rubber v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). To establish liability based on respondeat superior, a plaintiff must prove: (1) an agency relationship between the alleged tortfeasor and the employer, e.g., employer-employee relationship; (2) the alleged tortfeasor committed a tort; and (3) the tort was committed in the course and scope of the employee's authority. *Id.*; *Knight v. City Street, L.L.C.*, 167 S.W.3d 580, 582–83 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)). A tort is within the course and scope of an employee's authority if his action: (1) was in the employee's general authority; (2) was in furtherance of the employer's business; and (3) was to accomplish the object for which the employee was hired. *Mayes*, 236 S.W.3d at 757; *Knight*, 167 S.W.3d at 582–83.

Generally, the employer of an independent contractor is not liable for harm caused to another by an act or omission of the contractor or his servants. *Gonzalez v. Ramirez*, 463 S.W.3d 499, 506 (Tex. 2015); *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006); *see* RESTATEMENT (SECOND) OF TORTS § 409 (1965). However, in certain circumstances, employers may be held vicariously liable for the negligence of independent contractors. *Fifth Club, Inc.*, 196 S.W.3d at 795. First, if the work involves a nondelegable duty, whether because of inherent danger or statutory prescription, an employer may be held vicariously liable. *Id.* (citing *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004) (inherently dangerous activities); *MBank El Paso, N.A. v. Sanchez*, 836 S.W.3d 151, 153 (Tex. 1992) (statutory imposition)). Nondelegable duties are imposed by law based on concerns for public safety, precluding parties bearing the duty from delegating it to independent contractors. *Fifth Club, Inc.*, 196 S.W.3d at 795. Whether a party is vicariously liable for the work of a non-employee "is determined by the facts of the case analyzed under the … nondelegable duty exception … which includes statutorily-imposed duties." *Id.* at 796.

One such statutory, nondelegable duty, and the one relied upon by Rodriguez, arises out of the Federal Motor Carrier Safety Regulations ("FMCSR" or "regulations")[2], which apply to motor carriers authorized to operate by the Federal Motor Carrier Safety Administration ("FMCSA"). *See Morris v. JTM Material, Inc.*, 78 S.W.3d 28, 38 (Tex. App.—Fort Worth 2002, no pet.); *see also* 49 C.F.R. § 376.1. The regulations were enacted in response to motor carriers' attempts to immunize themselves from liability by leasing trucks and characterizing drivers as independent contractors. *Motloch v. Albuquerque Tortilla Co., Inc.*, 454 S.W.3d 30, 37 (Tex. App.—Eastland 2014, no pet.) (citing *Morris*, 78 S.W.3d at 38). As recognized by the court in *Morris*, because

---

[2] Texas has adopted many, but not all, of the FMCSRs. *See generally* 37 TEX. ADMIN. CODE 4.11, *et seq.* (2018). However, Rodriguez alleged application of the FMCSRs, not the regulations under Texas law.

under the FMCSR interstate motor carriers have a legal right and duty to control leased vehicles that are operated for their benefit, the regulations create a statutory employee relationship between the employees of the owner-lessors and the lessee-carriers. *Id.* at 38–39; *see Tamez v. Sw. Motor Transport, Inc.*, 155 S.W.3d 564, 573 (Tex. App.—San Antonio 2004, no pet.). Thus, an interstate motor carrier is vicariously liable as a matter of law under the FMCSR for the negligence of its statutory employee drivers. *Motloch*, 454 S.W.3d at 39. However, relying on federal law, the Texas Supreme Court has held that when analyzing whether a defendant is a motor carrier, a court must focus on the specific transaction at issue, not merely whether a defendant is certified as a motor carrier. *Gonzalez*, 463 S.W.3d at 504 (citing *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 507 (7th Cir. 2009); *Harris v. Velichkov*, 860 F. Supp. 2d 970, 979 (D. Neb. 2012), *aff'd*, *Harris v. FedEx Nat'l LTL*, 760 F.3d 780 (8th Cir. 2014)). In other words, possession of a motor carrier license is not determinative of the applicability of the regulations; rather, the critical inquiry is what capacity the defendant was acting during the transaction or incident. *Camp*, 553 F.3d. at 507. Federal courts have specifically held that shippers who engage independent contractors to transport goods are not subject to the FMCSR. *See, e.g.*, *Harris*, 860 F. Supp. 2d at 979; *Caballero v. Archer*, Civil Action No. SA-04-CA-561-OG, 2007 WL 628755, at *4 (W.D. Tex. Feb. 1, 2007).

Second, and in addition to the nondelegable duty exception, an employer may also be vicariously liable for the acts of an independent contractor if the employer retains control over the manner in which an independent contractor performs the work that causes the damage. *Gonzalez*, 463 S.W.3d at 506; *Fifth Club, Inc.*, 196 S.W.3d 791. A right of control requires more than a general right to: (1) order work stopped or resumed, (2) inspect work progress or receive reports, (3) make suggestions or recommendations that need not necessarily be followed, or (4) prescribe alterations and deviations. *Gonzalez*, 463 S.W.3d at 506 (quoting *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c); *Fifth*

*Club, Inc.*, 196 S.W.3d 791 (same). Rather, "[t]here must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way." *Gonzalez*, 463 S.W.3d at 506; *Fifth Club, Inc.*, 196 S.W.3d 791. This does not mean that an employer cannot — without subjecting itself to liability — direct when and where an independent contractor does the work or request information and reports about it. *Gonzalez*, 463 S.W.3d at 506; *Fifth Club, Inc.*, 196 S.W.3d 791. Liability attaches only when the employer "controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses." *Fifth Club, Inc.*, 196 S.W.3d 791. However, the supervisory control must relate to the activity that actually caused the injury. *Id.*

Rodriguez also alleged Panther itself was negligent. Under Texas law, a plaintiff establishes a negligence claim by proving the defendant owed a legal duty to the plaintiff, the defendant breached that duty, and the breach proximately caused the plaintiff's injury or damages. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 63 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Cumpian v. Pan Am. Exp., Inc.*, 147 S.W.3d 515, 517 (Tex. App.—San Antonio 2004, no pet.). The existence of a duty is a question of law for the court based on facts surrounding the occurrence in question. *Davis-Lynch, Inc.*, 472 S.W.3d at 64.

*Application*

1. *Vicarious Liability — Nondelegable Duty/Statutory Employees Under FMSCR*

Rodriguez first contends Panther is vicariously liable as a matter of law for the conduct of Ellis and Daly because Panther was a motor carrier, and therefore, pursuant the FMCSR, Ellis and Daly were Panther's statutory employers, rendering Panther liable as a matter of law. Panther counters, arguing that based on the transaction in this matter, Panther was acting as a shipper as opposed to a motor carrier, and thus, is not vicariously liable under the FMCSR.

In support of its contention that Panther is a motor carrier subject to a nondelegable duty under the FMCSR, Rodriguez offered as summary judgment evidence, the contract between Panther and an entity known as All Roads, Inc. and the accident report. Both documents establish, and it is undisputed, that Panther is a licensed motor carrier under the FMCSR. However, the inquiry does not end there. As discussed above, it is not enough that the defendant is a motor carrier; rather, the defendant must be a motor carrier with regard to the transaction in question. *Gonzalez*, 463 S.W.3d at 504. Here, Rodriguez's own summary judgment evidence shows that with regard to the transaction in this case, Panther was acting as a shipper as opposed to a motor carrier. First, the contract between All Roads, Inc. and Panther shows All Roads Inc. was acting as the motor carrier, providing its vehicles and drivers for the transport of goods belonging to Panther's customers. In addition, Rodriguez offered as summary judgment proof the deposition of Panther's corporate representative, Allen H. Motter, who testified how Panther operates:

> Our customer calls us and we offer that load to a fleet owner or multiple fleet owners and they decide if they want to take that load. We negotiate on price with the fleet owner, and he or she decides — the owner of that company decides whether they want to take that freight.
>
> * * *
>
> If the answer is, Yes, they'll take that freight, then they take that freight — we notify the customer that we can accept that pickup. We ask the customer what time the shipment will be ready, we communicate that to the fleet owner, and that fleet owner makes that happen. So they're actually performing the trucking functions and they're picking up that freight, they're transporting that freight, they're delivering that freight. That's — that's basically, in a nutshell, at a high level how the transaction happens.

Motter's deposition testimony confirms that with regard to the transaction in question — and pursuant to the contract between Panther and All Roads, Inc. — All Roads, Inc. was acting as the motor carrier; Panther was acting as a shipper. We find *Harris v. Velichkov* instructive — as

did the supreme court in *Gonzalez*. *See Gonzalez*, 463 S.W.3d at 505–06 (citing *Harris*, 860 F. Supp. 2d at 973–80).

In *Harris*, FedEx National LTL, Inc. contracted with Fresh Start to transport certain cargo. Fresh Start employed a driver, Velichkov, who was involved in an automobile accident, resulting in the death of one person and injuries to another ("the plaintiffs"). 860 F. Supp. 2d at 973. The plaintiffs sued FedEx, alleging it was vicariously liable under the FMCSR for Velichkov's negligence based on a nondelegable duty. *Id.* at 973, 978–79. It was undisputed that FedEx is a licensed motor carrier under the FMCSR and has its own fleet of vehicles. *Id.* However, FedEx also contracted with various motor carriers to transport goods between certain cities. *Id.* at 973–74. Because FedEx had contracted with Fresh Start to provide transportation services — and Fresh Start hired Velichkov, FedEx moved for summary judgment, arguing it was not subject to the regulations because it was not acting as a motor carrier in the transaction at issue. *Id.* at 975.

On review, the federal district court stated the applicability of the regulations to FedEx rested on the assumption that FedEx was a motor carrier. *Id.* at 979. The court held the plaintiffs' assumption that because FedEx is a licensed motor carrier FedEx was a motor carrier for purposes of this case was incorrect. *Id.* Rather, FedEx's status as a motor carrier was wholly dependent on the particular transaction. *Id.* FedEx hired Fresh Start to transport goods and Fresh Start hired the driver, Velichkov. *Id.* Thus, FedEx was not acting as a motor carrier, but as a shipper; Fresh Start was acting as the motor carrier, hired by FedEx to transport goods. *Id.* That FedEx might have had authority to operate as a motor carrier was irrelevant to the transaction at issued. *Id.* The court held it would be absurd to find FedEx was the motor carrier in these circumstances because if it was, it would be required to undertake motor-carrier duties that only the entity who hired the driver should be required to undertake, e.g., obtaining and maintaining records on the driver — including driving and medical records, retaining the driver's application for employment, conducting a road

test for the driver. *Id.* These mandates make sense only for the entity who hires the driver, i.e., the actual motor carrier. *Id.* at 979–80. According to the court, "to read FedEx as a 'motor carrier' in this case and thereby an employer of Fresh Start or Velichkov, would … burden FedEx with the nonsensical duties" with regard to a driver with whom it had no relationship. *Id.* at 980. The court concluded that the plaintiffs' attempt to "bootstrap" FedEx into motor carrier status failed because of the actual roles assumed by the entities in this case. *Id.* It was Fresh Start who assumed the motor-carrier duties, and Fresh Start that was subject to any nondelegable duty. *See id.*

In this case — and by analogy to *Harris* — All Roads, Inc. (Fresh Start) was hired by Panther (FedEx) to transport goods for Panther (FedEx). All Roads, Inc. (Fresh Start) hired Ellis and Daly (Velichkov) as drivers. Thus, All Roads, Inc., like Fresh Start, acted as motor carrier, assuming the duties provided for in the FMCSR. Just as it would have been absurd to hold FedEx to a nondelegable duty for a driver hired by motor carrier Fresh Start, it would likewise be absurd to hold Panther to a nondelegable duty for drivers hired by All Roads, Inc. The summary judgment evidence produced by Rodriguez merely establishes Panther is a motor carrier. However, Rodriguez did not produce even a scintilla of summary judgment evidence to establish that Panther was a motor carrier with regard to the transaction at issue in this case. Rather, evidence produced by Rodriguez — specifically the deposition of Motter, established Panther's status as a shipper as opposed to a motor carrier. Accordingly, we hold Rodriguez failed to raise a fact issue with regard to the claim of respondeat superior based on a statutory, nondelegable duty under the FMCSR.

2. *Vicarious Liability — Right of Control Under Common Law*

Alternatively, with regard to his claim of respondeat superior, Rodriguez contends he produced more than a scintilla of evidence that Panther retained control over the drivers — Ellis and Daly, rendering Panther vicariously liable even if the drivers are not its statutory employees under the FMCSR. In support, Rodriguez points to the contract between Panther and All Roads,

- 16 -

Inc., Panther's Driver Handbook and Safety Manual, and certain deposition testimony from

Motter. According to Rodriguez, within this evidence, it shows Panther:

1. Required drivers to meet certain qualification and compliance standards;
2. Reserved the right to require the replacement of any driver who failed to meet its standards or failed to comply with its policies and procedures;
3. Required drivers to operate their trucks in accordance with the law and Panther's operating authorities;
4. Required drivers to meet procedures evidencing loading/unloading in order to secure payment for same;
5. Required drivers to appear at Panther's headquarters for health inspections and orientation;
6. Required drivers to adhere to Panther's rules and regulations regarding conduct — even ignoring their employers' instructions if they conflict with Panther's;
7. Expected drivers to contact Panther with regard to safety policies and procedures in the Handbook;
8. Reserved the right to disqualify a driver if the driver is found to be in violation of the Handbook; and
9. Inspected and approved any equipment to be used on Panther's behalf.

Viewing this evidence in the light most favorable to Rodriguez, as we must, we hold it does

not show a right of control sufficient to raise a fact issue on vicarious liability for purposes of

respondeat superior. Rodriguez pled that his injury occurred because the drivers — Ellis and Daly

— failed to properly secure the tractor-trailer at the loading dock or take certain actions during

loading and unloading, which resulted in the tractor-trailer moving forward and creating the gap

into which he and the forklift fell. There is nothing in the evidence produced and relied upon by

Rodriguez to establish the things over which Panther asserted control extended to the activities

from which Rodriguez's injury arose. *See Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828,

847 (Tex. App.—Fort Worth 2006, no pet.) (citing *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736

(Tex. 1998) (noting that in determining whether duty exists in retained control case, focus is on

whether retained control was specifically related to alleged injury); *Exxon Corp. v. Tidwell*, 867

S.W.2d 19, 23 (Tex. 1993) (same)). As the supreme court stated in *Fifth Club, Inc.*, the supervisory

control must relate to the activity that caused the injury. 196 S.W.3d at 791. It is not enough to

show Panther controlled certain aspects of a driver's activities if Rodriguez's injury arose from something else. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008). The control retained by Panther, as alleged by Rodriguez, related to qualifications and generalized safety provisions, not securing tractor-trailers and the activities related thereto during loading and unloading. And, according to the supreme court, requiring an independent contractor to comply with general safety guidelines and other safety precautions does not impose an unqualified duty of care on a contractor to ensure the safety of others. *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999) (citing *Hoeschst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357–58 (Tex. 1998)).

Moreover, the contract between Panther and All Roads, Inc., shows that as far as operations are concerned, All Roads, Inc. controlled the drivers and their use of the equipment. In the contract, which was part of Rodriguez's summary judgment evidence, paragraph 9.02 specifically states that All Roads, Inc. "will direct the operation of the equipment in all respects and will determine the methods, means, and manner of performance of services" under the contract and is responsible for, among other things, loading and unloading freight onto and from trailers. Thus, Rodriguez's own evidence belies any control by Panther over the activities that resulted in Rodriguez's injuries.

We therefore hold that with regard to his claim for respondeat superior, Rodriguez failed to produce even a scintilla of evidence that would establish Panther's vicarious liability for the acts of Ellis or Daly based on a right of control under common law.

### 3. *Panther's Own Negligence*

Panther alleged in its no evidence motion there was no evidence of duty, breach, or causation. If Rodriguez failed to produce a scintilla of evidence as to any one of these elements, summary judgment in favor of Panther was proper. *See DTND Sierra Invs.*, 2013 WL 4483436,

at *2; *Tatsch*, 2014 WL 6808637, at *2. With regard to the element of breach, in his response to the no evidence motion, and now on appeal, Rodriguez asserts the "manner in which the accident occurred and the sheer distance the truck traveled when it moved away from the loading dock (far enough for the forklift to fall in the space between the dock and rear of the subject truck) is evidence" the parking brake was not up to required standards, the drivers failed to apply the brake, or the drivers attempted to drive away from the dock without first ensuring all loading and unloading had ceased. As evidence of these assertions, Rodriguez points to his own deposition testimony, and photographs of the area after the incident.

Rodriguez testified that just before the accident, he drove the forklift into the tractor-trailer and "grabbed merchandise." As he was backing up, "the truck moved forward or they moved it, I don't know." He said when he felt the truck move, half of the forklift was still inside the truck. Rodriguez stated that after he felt the truck moved he and the forklift "went down," with the back of the forklift hitting the ground first. He could not recall whether the force of the fall caused the truck to move further forward. The photographs show the aftermath of the accident.

The evidence relied upon by Rodriguez shows merely that the truck moved and he and the forklift fell. The photographs only show the result of the fall. Rodriguez did not produce any evidence to show the parking brake was defective, the drivers failed to set the parking brake, or the drivers pulled the tractor-trailer forward as he was unloading. The evidence produced by Rodriguez merely shows the truck somehow moved forward when he was inside and then fell into the gap created by the movement. Rodriguez failed to produce any evidence as to how the accident occurred — what breach was committed. For all we know, based on the evidence produced by Rodriguez, a person not associated with Panther or the drivers released the parking brake or moved the tractor-trailer, or the tractor-trailer moved as a result of unknown natural forces. Rodriguez's argument is reminiscent of a res ipsa loquitor allegation — the truck moved, therefore someone

connected to the truck committed some sort breach. *See, e.g., Sanders v. Naes Cent., Inc.*, 498 S.W.3d 256, 258–59 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (recognizing res ipsa loquitur is a rule of evidence permitting fact finder to infer negligence; it relieves plaintiff of burden of proving specific act of negligence by defendant); *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 740 (Tex. App.—Dallas 1999, pet. denied). However, Rodriguez did not plead res ipsa loquitur, and therefore, cannot rely upon it. *See, e.g., Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 255 (Tex. 1974); *Lambert v. Gearhart-Owen Indus.*, 626 S.W.2d 845, 847 (Tex. App.—Corpus Christi 1981, no writ); *Brown Express Co. v. Burns*, 608 S.W.2d 291, 293 (Tex. Civ. App.—Waco 1980, no writ).

Even when viewed in the light most favorable to Rodriguez, the evidence he produced creates nothing more than mere surmise or suspicion that Panther or the drivers committed some sort of breach. Evidence that is so weak as to do no more than create mere surmise or suspicion is, in legal effect, no evidence, and is not the same as some evidence. *King Ranch*, 118 S.W.3d at 754. The mere occurrence of an event resulting in an injury does not establish — or raise a fact issue — as to negligence. *See West Star Transp., Inc. v. Robison*, 457 S.W.3d 178, 185–86 (Tex. App.—Amarillo 2015, pet. denied). Accordingly, we hold Rodriguez failed to produce evidence to defeat Panther's no evidence motion for summary judgment.

### CONCLUSION

Based on our analysis, we hold: (1) the trial court erred in granting summary judgment in favor of Dicex because in its motion for summary judgment, Dicex relied on the exclusive remedy provision of the TWCA as made applicable to temporary employment services through section 93.004(b) of the Labor Code, which was inapplicable due to its effective date; and (2) the trial court properly granted summary judgment in favor of Panther with regard to Rodriguez's claims of respondeat superior and negligence because the FMCSR did not impose upon Panther a

nondelegable duty with regard to the transaction in this case, Rodriguez produced no summary judgment evidence to show Panther had a right of control with regard to the activities that allegedly caused his injuries, and Rodriguez failed to produce even a scintilla of evidence on the element of breach. Accordingly, we reverse the trial court's summary judgment in favor of Dicex and remand that portion of the matter to the trial court for further proceedings, but affirm the trial court's summary judgment in favor of Panther.

Marialyn Barnard, Justice